**MAGNOLIA PETROLEUM CO. et al. v.
RAILROAD COMMISSION et al.**

No. 8790.

Court of Civil Appeals of Texas.   Austin.
March 22, 1939.

Rehearing Denied April 12, 1939.

John E. Green, Jr., and Joe S. Brown, both of Houston, and Greenwood, Moody & Robertson, of Austin, for appellants.

Wm. McCraw, Atty. Gen., and Chas. D. Rutta, Asst. Atty. Gen. (Harry S. Pollard, Asst. Atty. Gen., of counsel), for appellee Railroad Commission.

Hurst, Leak & Burke, of Longview, for appellee S. F. Jordan.

BAUGH, Justice.

This is a Rule 37 case.   The Railroad Commission, on March 4, 1937, granted to S. F. Jordan a permit to drill a well as an exception to Rule 37, to prevent confiscation of property, in the center of a strip of land in Gregg County, in what is termed the fairway of the East Texas oil field.

The leasehold involved was shown to be 141 feet wide, 1,565 feet long, and to have contained approximately 5.08 acres. The Magnolia, lessee of an adjacent tract, brought the suit originally to set aside said permit, in which the Gulf Oil Corporation intervened. When called for trial the Magnolia took a nonsuit, and the Gulf, owner of the adjoining lease on the south of the strip, prosecuted its intervention. Trial was to the court without a jury, the permit upheld by the trial court, and the Gulf has appealed.

The location of the strip here involved and its relation to the surrounding tracts is shown by the attached map. H. G. Corbin purchased in fee approximately 155 acres of land north of said strip in 1920. The field notes of his deed called to run along the north line of said strip but the fence enclosed the strip within his enclosure, and his use, occupancy, and claim to the strip had ripened into a limitation title thereto in December, 1930, when he leased to Adkisson the 155 acres described in said lease by the same field notes contained in the 1920 deed to him. The lease contained the following provision: "This grant covers all of lessor's land in surveys as mentioned above whether or not specifically described by metes and bounds."

This 155-acre lease was in 1931 subdivided into three larger tracts, the west 75 acres being subsequently acquired by the Margay Oil Corporation; the north 40 acres of the east 80 acres by Fan & McGaha; and the south 40 acres of the east 80 acres by Jackson, Wise & Snedden, Incorporated, and others. In April, 1935, after this area had been developed for oil,

Corbin, as fee owner, conveyed the strip of land here involved to J. E. Burnett. On May 14, 1935, Burnett executed an oil and gas lease thereon to Jordan. This conveyance and lease were manifestly predicated upon the assumption that the 5.08-acre tract was not included in the lease made by Corbin to Adkisson in December, 1930. Jordan thereupon, in June, 1935, applied to the Commission for permits to drill 4 wells on said strip. This application was denied, July 11, 1935. The memorandum to the Commission made by the examiner who heard the application stated that the "cover all" clause in the original lease on the 155-acre tract made by Corbin in 1930 included the strip, and that Corbin had no interest therein to convey in 1935; and that if he did, his failure to include said strip was a voluntary subdivision made by him precluding any right to an exception to Rule 37, it being shown that the larger tract was capable of development as a whole without such exception.

Jordan then applied for a permit for 3 wells on said strip, which application was denied on January 13, 1936, upon a memorandum to the Commission from the examiner to the same effect as on the former application. Both of these applications were protested by owners of surrounding leaseholds, including Jackson, Wise & Snedden. Jordan then applied for 1 well on said strip which application was heard by the examiner on February 26, 1937. In his memorandum to the Commission, the examiner recited the former hearings; that prior thereto Jackson, Wise & Snedden had claimed that the strip was included within their leasehold by the "cover all" clause; that since the former hearings Jordan had secured from Jackson, Wise & Snedden a quitclaim to this strip and that "applicant has now apparently cured his title in that respect"; and that "this strip undoubtedly·represents a subdivision of the Corbin farm in violation of Rule 37 * * *." This last application was not protested by Jackson, Wise & Snedden, and was granted by the Commission.

The Gulf, part owner of the leasehold to the south, here urges that under the "cover all" clause in the original lease of 1930 the owner of the south 40 acres (by survey shown to be 41.7 acres) of the east 80 acres of the original 155-acre Corbin lease, became, and was at the time the permit was granted, the owner of the leasehold on this 5.08-acre tract, under the holding of the Supreme Court in Sun Oil Company v. Burns, idem v. Bennett, 125 Tex. 549, 84 S.W.2d 442 and 447; and Mann v. Rio Bravo Oil Co., Tex.Civ.App., 107 S.W. 2d 653, writ refused. If this were a title suit between Jordan, lessee of the 5.08-acre strip, and the owner of the 41.7-acre tract to the north, this contention would present a serious question. But the Gulf claims no interest in said strip such as was presented in the case of Altgelt v. Texas Co., Tex. Civ.App., 101 S.W.2d 1.104. And the parties whom the Gulf claims owned the leasehold on said strip are not complaining. On the contrary, Jordan was the record owner of said leasehold and in possession thereof under the title claimed by him. While it was shown upon the trial that at the time Jackson, Wise & Snedden, a corporation, executed a quit-claim deed to Jordan, it owned only a ¼ interest in the adjoining 41.7-acre lease, it is also true that the deed to this 5.08 acres from Corbin to Burnett in 1935, and the lease thereon by Burnett to Jordan, created an adverse claim of title against all owners of the 41.7-acre leasehold, even if such owners acquired a lease on said strip under the "cover all" clause of original Corbin lease. In so far, therefore, as the Gulf is concerned no title dispute was presented as to it.

The Gulf could, of course, by showing collusion or fraud between Jordan and the owners of the 41.7-acre leasehold for the purpose of circumventing the provisions of Rule 37, urge same as against the validity of said permit. Atlantic Ref. Co. v. Buckley, Tex.Civ.App., 123 S.W.2d 413. But no such showing was made. On the contrary the record rather negatives collusion. The fact that Jordan asserted in good faith a record title to a leasehold on said strip, was in possession thereof, and the parties whom the Gulf insists were the owners thereof had recognized or acquiesced in Jordan's claim both in the last proceeding before the Commission and in the trial court, does not present a bona fide title dispute which the Gulf, having no interest in such title, can assert on behalf of those who have not seen fit to assert it for themselves. Shell Pet. Corp. v. Railroad Comm., Tex.Civ.App., 120 S.W.2d 526.

Under the undisputed facts shown by this record, the failure of Corbin to include this strip in his original lease to Adkisson in 1930 (if it be conceded that

he did not so include it), his subsequent conveyance of the strip to Burnett in 1935, and the quit-claim from Jackson, Wise & Snedden to Jordan in 1937, manifestly constituted a voluntary subdivision thereof from a larger tract capable of development as a whole without an exception to Rule 37, which under the rules of the Commission and numerous decisions of this court, beginning with Sun Oil Co. v. Railroad Comm., Tex.Civ.App., 68 S. W.2d 609, would give the subsequent vendee or lessee no vested right in such subdivision which would entitle him to an exception to the rule.

That being true, the question arises, under the holding of the Supreme Court in the Century case (Railroad Comm. v. Magnolia Pet. Co., 130 Tex. 484, 109 S. W.2d 967), whether the 41.7-acre Jackson, Wise & Snedden tract together with the 5.08-acre tract, treating the combined acreage as a single tract, was entitled to the additional well here involved.

The record clearly discloses that this was not the basis on which the permit was applied for; and further that this was not the theory upon which the Commission granted it. Jackson, Wise & Snedden had not asked for any additional well on their acreage, and had at the first two hearings on Jordan's applications protested the granting of any permit on the 5.08-acre strip. But an exactly similar situation was presented to the Supreme Court in the Century case, supra. Under the presumption of validity indulged in support of the Commission's orders, the courts have gone far in sustaining them. If experience in Rule 37 cases serve as a guide, such indulged presumptions have in some instances led to absurdities. Courts, both trial and appellate, should not be required, in sustaining the validity of the Commission's order, to hear evidence upon, and to examine into matters, which the Commission itself has not considered nor made a basis of its order. However, that matter is now foreclosed by express decisions of the Supreme Court in which the question was involved.

■ The method generally applied in determining whether a tract in question is at a drainage disadvantage, or, to put it differently, whether the owners thereof are given an equal opportunity with lessees of the surrounding properties to recover their fair share of oil in place beneath such tract, is to compare the densi-ty and location of wells on such tract with those on the surrounding 8 times area. This method is applied where the underground producing sand conditions are, as was true in the instant case, substantially uniform. Applying this method to the 41.7-acre tract and the 5.08-acre tract, treating the combined tracts as a unit, on the issue of confiscation, the witness Hudnall, whose qualifications were admitted, testified as follows:

"Q. Now, I wish you would state whether or not in your study of this area you have any opinion as to whether during the producing life of the field the entire Jackson—Jackson, Wise & Snedden lease, considered for the moment together with the 5-1/2-acre tract, the Jordan tract would suffer any drainage from adjoining leases? A. Yes, sir; I think it was at a drainage disadvantage at that time.

"Q. That is as of March 4, 1937? A. Yes, sir.

"Q. Have you or not an opinion as to whether the tract, considered as one, would be entitled to another well to offset this drainage disadvantage that it suffers, considered as a whole, from surrounding leases, as of March 4, 1937? A. Yes, sir, I think it would require one additional well to give it equal opportunity with the eight times area around it, to produce the oil that lays beneath it."

■ This testimony was sufficient to sustain the permit here involved on the issue of confiscation. It consequently becomes unnecessary for us to consider the question of waste.

■■ The Gulf also complains of the location of the well authorized in the center of said strip. In the hearing before the Commission on Jordan's last application, wherein he requested that the well be located 323 feet from the west end of this strip, the Gulf itself requested that in the event a well be authorized on this strip, it be located near the center thereof. Not only can it, for that reason, not now be heard to complain as to such location, but under the holding of the Supreme Court in the Century case, the location of such well appears to be a matter of no consequence. In the Century case, a far more flagrant departure from the spacing provisions of Rule 37 relating to property lines (in that case the well was only 20 feet from protestant's property

line) was presented than is presented here. In that case we held that if it be assumed that the combined tracts were entitled to an additional well, its location therein would be arbitrary and unreasonable. See Magnolia Pet. Co. v. Railroad Comm., Tex.Civ.App., 105 S.W.2d 787, 791. The Supreme Court, however, in disposing of that case, upon writ granted, did not discuss this question and sustained the permit as granted. If it be conceded, for the purposes of this suit, that the Commission was authorized to grant an additional well on the Jackson, Wise & Snedden and the Jordan combined leases, treated as one tract (which manifestly was not the basis of its order), in view of the location of wells already drilled on the combined tract, no reason appears for its location as authorized. Nevertheless, under the decision of the Supreme Court in the Century case, the permit here involved cannot be set aside on this ground.

Appellant also attacks said permit on the ground that the Commissioners who signed the order neither heard nor read the testimony presented to the examiner who heard the application. The record discloses that three hearings on Jordan's applications relating to this strip of land were had before the examiner, on each of which the examiner made a memorandum in writing summarizing his factual conclusions, and presented same, together with the documentary evidence brought before him, to the Commission with his recommendations. The third hearing was, except on the title issue, in effect a rehearing on the former applications. Transcripts of the evidence at the former hearings were available to the Commission when it granted the permit. In addition to the documentary evidence and the examiner's written memorandums, the examiner took the matter up with the Commissioners and discussed it orally. Without discussing the contention made by appellant at length, we think that these facts and circumstances, coupled with facts already ascertained by the Commission, were sufficient to meet the due process requirements of the State and Federal Constitutions, Vernon's Ann.St. Const. art. 1, § 19; U.S.C.A.Const. Amend. 14; the provisions of Art. 6519a, Vernon's Ann.Civ.Stats. (Acts 1929, 41st Leg. p. 539, Ch. 262, Sec. 1); and the requirements laid down in Morgan v.

United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288. See also Humble Oil & Ref. Co. v. Railroad Comm., Tex.Civ. App., 99 S.W.2d 401. This contention is therefore not sustained.

While we have not undertaken to discuss all of the contentions made by appellant, what we have said is determinative of the appeal. The judgment of the trial court is affirmed.

Affirmed.

BLAIR, J., concurs in judgment.