## SUNSHINE BUS LINES, Inc., v. RAILROAD COMMISSION et al.

### No. 9104.

Court of Civil Appeals of Texas. Austin.

March 12, 1941.

Rehearing Denied April 2, 1941.

Everett L. Looney, of Austin, and Barnes & McElroy, of Terrell, for appellant.

Carl L. Phinney, of Dallas, Carlisle & Henry, of Kaufman, and Wheeler & Wheeler, of Austin, for appellee H. A. Wimpee.

Gerald C. Mann., Atty. Gen., and Geo. W. Barcus and Glenn R. Lewis, Asst. Attys. Gen., for appellee Railroad Commission.

BLAIR, Justice.

This litigation arose as an appeal under the Motor Carrier Act (Art. 911a, Sec. 17, Vernon's Ann.Civ.St.) from the order of the Railroad Commission granting appellee, H. A. Wimpee, a certificate to operate a motor bus service from Dallas to Van via Seagoville, Crandall, Gastonia, Kaufman, Ola, Cedarvale, and Canton, and return to Dallas over the same route. Appellant, Sunshine Bus Line, Inc., the operator of a bus service over the portion of the proposed route between Kaufman and Seagoville, unsuccessfully sought in the trial court and here seeks to have the order granting the certificate declared invalid upon the following grounds or points:

1. Because in granting the certificate and in executing the order complained of, the Commission "did not act as a collective body, did not hold a meeting, but acted as individuals only; Commissioners Sadler and Smith purportedly executed said order and said certificate, but not as a result of any meeting, but separately and as individuals, at different times and at different places, Commissioner Sadler affixing his signature to same at Austin, the seat of government, and Commissioner Smith not affixing his signature at all, but to the contrary, his signature was affixed thereto in the office of the Railroad Commission at Austin by his private secretary, Mrs. Perie Stevenson, when he was absent from said office and out of Austin."

2. Because the order "did not result from a regularly scheduled or called meeting of the Railroad Commission, but was held at Marlin, Texas attended only by Commissioners Smith and Sadler, of which purported meeting Commissioner Thompson did not have notice, he did not attend."

3. "Because the testimony before the Commission failed wholly to show that the public necessity existed for the service pro-

posed by appellee Wimpee, and it wholly failed to show that the existing service over such route was inadequate."

Neither of these contentions is sustained.

The application for the permit was filed January 24, 1940, and was set for and a hearing held at Kaufman on February 20th and 21st, 1940, before the duly appointed examiner of the Commissioner. The testimony taken at this hearing was reduced to writing in question and answer form by the official reporter of the Commission, which was completed on March 16, 1940, and was through, the proper officials of the Commission delivered to Commissioner Sadler on that date. Commissioner Sadler testified that Commissioner Smith became ill about the middle of February, 1940, and was confined to his home in Austin and in a hospital at Marlin for several months, during which time he did not come to his office in Austin; that Commissioner Thompson was absent from his office most of the time of the consideration of the application in question, and from those in his office witness was unable to obtain any information as to his whereabouts; and that for this reason he was compelled to confer with Commissioner Smith either at his home or in Marlin about all matters coming before the Commission; that upon receipt of the transcript of the testimony in the instant case he read it, and on the following day took it to the hospital at Marlin; that prior to that time he and Commissioner Smith had discussed the application at least twice; that on March 17, 1940, he took the matter up with Commissioner Smith at the hospital in Marlin, discussed the testimony with him at length, Smith not reading it because of illness; that on that occasion he and Commissioner Smith went fully into the matter together and mutually agreed and determined to grant the application for the certificate; and that on this occasion and all occasions during the illness of Commissioner Smith, they transacted the business of the Commission in the same manner in those places as they would have done in the offices of the Commission in Austin, or elsewhere.

Commissioner Sadler further testified that upon returning to Austin he caused the order to be prepared granting the certificate to appellee; that he signed it and Commissioner Smith's name was affixed thereto by his secretary at Austin, under authority of Commissioner Smith. The certificate had affixed to it the signature of both Sadler and Smith, and no claim is made that Smith did not authorize the signing of his name to all the instruments in question. Nor was it shown that the absent member was in any way displeased with the action of the Commission, nor that he would have been present if notified of the meetings at which the application of appellee was discussed and finally granted. A motion for a rehearing was filed by appellant, which together with the exceptions to the order granting the certificate and the application for oral argument were considered by Commissioner Sadler and overruled. That in accordance with the agreement between him and Commissioner Smith, he took the motion for rehearing up with Smith's secretary, and asked her to call him about the matter by phone. The signatures of both Sadler and Smith were affixed to the order overruling the exceptions and motion for a rehearing, and the order was duly attested by the secretary of the department, Mr. Petet, as were all other orders involved in the application of appellee.

Art. 14, R.S.1925, provides: "The majority of any legally constituted board or commission, unless otherwise specifically provided, shall constitute a quorum for the transaction of business."

The material portions of Sec. 12 of Art. 911a of the Motor Carrier Law provide: "* * * The Commission or any member thereof, or authorized representative of the Commission, shall have the power to compel the attendance of witnesses, swear witnesses, take their testimony under oath, make record thereof, and if such record is made under the direction of a Commissioner, or authorized representative of the Commission a majority of the Commission may upon the record render judgment as if the case had been heard before a majority of the members of the Commission. The Commission shall have the power and authority under this Act (Art. 911a; P.C. art. 1690a) to do and perform all necessary things to carry out the purpose, intent, and provisions of this Act * * *, whether herein specifically mentioned or not, and to that end may hold hearings at any place in Texas which it may designate."

■ The statutes do not require that notice of the meetings of the Commission to transact its business be given any of the Commissioners. Nor do they require that all members be present, but to the contrary provide that two or a majority of the Com-

missioners may transact its business. The law assumes that each Commissioner will make himself available and will keep up with the business of the Commission, and also assumes that on many occasions all of the Commissioners cannot be present. The testimony of Commissioner Sadler showed such to be the situation in the instant case. The law also provides that) the Commission may hold its meetings to transact its motor bus business "at any place in Texas which it may designate." Commissioner Sadler further testified that during the several months illness of Commissioner Smith they transacted by agreement all of the Commission's business at the hospital in Marlin, except for two or three occasions when he and Commissioner Thompson held probation hearings in Austin. Since the Commission afforded appellant a full hearing on the application of appellee before the legally appointed examiner of the Commission, and since the testimony by him was reduced to writing and read by Commissioner Sadler, and at a meeting of himself and Commissioner Smith the evidence and other matters were fully discussed and they at such meeting mutually determined that the certificate should be) granted, and so ordered, we think that the statutes under which the Commission acted were substantially complied with. Magnolia Petroleum Co. v. R. R. Commission, Tex.Civ. App., 127 S.W.2d 230, writ dismissed, correct judgment; Railroad Commission v. Rodgers, Tex.Civ.App., 57 S.W.2d 294.

■ We are further of the view that since the Commission made its decision at a meeting held for that purpose, the matter of signing or executing the order became a ministerial function which could be and as to Commissioner Smith was delegated to duly appointed and acting subordinates in the office. 46 C.J., 1033, sec. 291b.

■ Nor do we sustain the contention of appellant that appellee wholly failed to show a public convenience and necessity for his proposed motor bus service, and wholly failed to show that existing service of such route was inadequate. Suffice it to say that only a portion of the route between Kaufman and Seagoville is covered by other bus service. Numerous witnesses living in the several other towns and villages along the proposed route testified that they had no motor bus service, and that the proposed service was needed and would be beneficial to them and a convenience to the people of the communities along the route. A district judge and court reporter testified that there was no direct service by bus from Kaufman to Van and Canton; that such service was needed and would be used by them and was needed and would be a convenience to the people of the communities served by the proposed route. This testimony is substantial evidence sustaining the order of the Commission under the rule announced by the court in Railroad Commission v. Shupee, Tex.Civ.App., 57 S.W.2d 295, and Railroad Commission v. Rapid Transit Co., Tex.Civ.App., 92 S.W. 2d 261, and the cases there cited.

■ The evidence likewise sustains the order against the attack that existing service was not shown to be inadequate and that the operations under the certificate would constitute ruinous competition. Most of the proposed route is not now served by any motor bus company, and much of the proposed service is not now being given by any existing company. It is true that appellant renders service over a small portion of the proposed route, but the adequacy of its service over the entire proposed route was a matter within the discretion of the Commission; and as said by this court in Texas Motor Coaches v. Railroad Commission, 59 S.W.2d 923, 926, "if, however, the service rendered over one route or highway is not adequate to meet the needs of adjacent territory which must be served over another highway, though between the same termini, it was a matter peculiarly within the realm of the commission's functions to determine whether such public convenience could be best met by an operator between said termini already in the field or by granting a permit to a competitor."

The judgment of the trial court will be affirmed.

Affirmed.