## LAKEVIEW CANAL CO. vs. HARDESTY M. CO.

(No. 1102, April 15th, 1924; 224 Pac. 853.)

APPEAL AND ERROR—MECHANIC'S LIEN—IRRIGATION WORKS—WATERS AND WATER COURSES.

1. Where the evidence is not in the record, it must be assumed that the court below determined an issue of fact in favor of the prevailing party.

2. A company that constructs a ditch and obtains water rights in connection with the development of land, under the Carey Act, has an interest in such ditch, water rights, and other appurtenances to which a lien may attach for work and materials furnished in the construction of the ditch, under Carey Act Cong. Aug. 18, 1894 (U. S. Comp. St. § 4685), and Comp. St. 1920, §§ 775, 795, 4860.

3. One claiming a lien against an irrigation canal construction company, cannot acquire greater rights than the company has, and the rights of land owners in and to the ditch and water rights cannot be prejudiced thereby.

ERROR to District Court, Park County; PERCY W. METZ, Judge.

*Brome & Hyde* for Plaintiff in error.

Carey Act Canal property is not subject to a mechanic's lien, Peters v. Killebrew, 24 Wyo. 53; the rule of strict construction prevails in the enforcement of mechanic's lien, Wyman v. Quayle, 9 Wyo. 326; Davis v. Co., 14 Wyo. 524; Becker v. Hopper, 22 Wyo. 253; 4869 C. S. is no broader than 4859, which does not authorize liens upon public property, and by analogy; the Wyoming rule should apply to 4860 C. S., the land belonged to the United States Government; the water right belonged to the State; the authorities are almost unanimous that a mechanic's lien does not attach to public property, 18 R. C. L. 881; Bennett v. Co. (Ida.),

93 Pac. 790 is not in point on the facts, the Hardesty Company had no interest and could not litigate it's independent claim against the Lakeview Company; the lien judgment should be reversed.

*E. J. Goppert* and *Hindry, Friedman & Brewster* for Hardesty Company; *Johnson & Johnson* and *J. H. Van Horn* for Interstate Construction Company, defendants in error.

The mechanic's lien law being remedial should be liberally construed, Braeckel v. Shade, (Mo.) 118 S. W. 1196; especially since the amendment of 1911; the lien act applies to Carey Act property; but in this case Lakeview Canal Company owned the canals and water rights, Bennett v. Co. (Ida.) 93 Pac. 789; the Idaho act is similar to the Wyoming law, see also Badger Co. v. Malone, 8 Kan. App. 692, 54 Pac. 692; Farnham, Vol. 3 p. 1995; Garland v. Co., 9 Utah 35, 34 Pac. 368, 164 U. S. 1, 17 Sup. Ct. 7, 41 L. ed. 327; Jarrell v. Block, (Okla.) 92 Pac. 167; Idaho Co. v. Dill, 139 Pac. 715; Cont. Bank v. Croey Bros. Co., 208 Fed. 976; the Hardesty Co. had a right to file its counterclaim below; proceedings under the Code of Civil Procedure are liberally construed, 5532 C. S., see also 5593, 5600, 5601, 5660, 5876 C. S., Maher v. Farnandis, 49 Wash. 250, 126 Pac. 542; as to right of intervention, see Barney v. Baltimore, 73 U. S. 280; Western Union v. Co., 221 Fed. 545; after intervention permitted, intervenor is entitled to a determination of his claim pursuant to established principles of equity.

BLUME, Justice.

The R. Hardesty Mfg. Co., hereinafter referred to as the claimant, intervened in an action brought in the district court of Park County, Wyoming, wherein the Interstate Construction Company was plaintiff and the Lakeview Canal Company and others were defendants, the case being the same case decided on appeal in this court on this date. Said claimant in its petition of intervention alleges that it furnished certain material to be used and actually used in

the enlargement and extension of the so-called Hammitt canal, situated in Park County, Wyoming; that said material was furnished to said Lakeview Canal Company, which was the construction company enlarging and extending said ditch. Claimant prays judgment against said construction company for the value of said material so furnished and used, and a lien against said ditch and the water rights and appurtenances thereunto belonging, pursuant to a lien notice theretofore duly filed in the office of the county clerk of Park County, Wyoming. The case was tried to the court and judgment was rendered in favor of the claimants for $12,544.82, and a lien established against the property of said construction company for the amount of $10,139.72. Said construction company brings this case here on error. No bill of exceptions is filed, and all we have before us in said case are the original pleadings and papers, together with a certified copy of the journal entries.

The only question involved in this case is as to whether or not said claimant is entitled to a lien against said ditch, water rights and appurtenances. It is the view of counsel for the plaintiff in error that the ditch and the water and the entire works belong to the state of Wyoming, against which no one is entitled to any lien; that the lands to be irrigated belonged principally to the United States and that said construction company, therefore, has no interest whatever in and to said works and property. This claim is based on the fact that the lands irrigated under the canal system of said construction company are lands taken up under the so-called "Carey Act."

Congress, by the act of August 18, 1894, commonly designated as the "Carey Act," and by subsequent amendatory acts (Comp. St. 1901, pp. 1554 to 1556), provided for reclamation, by irrigation, of desert lands situated in various states and territories. Under the provisions of the act, the state may make an application to the Secretary of the Interior to segregate certain desert lands from the body of the public domain for the purpose specified. A map and plans

showing the mode of the contemplated irrigation must be submitted, and if approved, the lands may be temporarily reserved, and as fast as the State furnishes satisfactory proof that any of said lands are irrigated, reclaimed and occupied by actual settlers, in the manner provided in said act, patents are issued to the state or its assigns for the lands so reclaimed and settled. The construction of reservoirs or ditches, or both, necessary to supply the water needed for such lands, is generally expensive. It is unlikely that a number of men, contemplating to settle on the lands, would get together, or would have the means, to construct the necessary irrigation works, and unless the state itself would undertake to do so, which has not heretofore been true it must be done through men with capital, who, in practice, have organized a corporation, to act as a construction company, for that purpose. The only method by which such corporation can insure the return of the money so expended is by the sale of an interest in the ditch and water rights to the various settlers upon the lands aforesaid. But such settlers are generally poor and to enable them to purchase any such interest at all, payments must be permitted to be made by installments. Congress, realizing this situation, provided that the State, to which such lands are granted, may create a lien, on the land reclaimed for the necessary expenses of reclamation and reasonable interest thereon. The legislature of this state accepted the benefits of said acts of Congress. Sec. 769, Wyo. C. S. 1920. By Section 775 it is provided that a company that desires to construct irrigation works to reclaim lands under the Carey Act must, in writing, request the Board of Land Commissioners to select the land to be reclaimed; must propose to construct the irrigation works necessary for such reclamation, and state the source of the water supply, the location and dimensions of the proposed works and the price and terms at which perpetual water rights will be sold to settlers on the lands to be reclaimed. Under other sections of the statute, an application for a permit for a water right in connection with said

reclamation must be filed with the state engineer; the proposal above mentioned is investigated and if approved, an application is directed to be made to the government of the United States for patents for such lands. Upon the withdrawal of the land by the department of the interior, said board of land commissioners may enter into a contract with said applicants submitting the proposal aforesaid, which contract must, among other things, specify the location, dimensions, character and estimate of the cost of the proposed irrigation work, and the price and the terms for which perpetual rights therein will be sold to the settlers upon said lands. Any person desiring to file upon and occupy any of said lands so withdrawn must make an application therefor to the State, paying the sum of fifty cents per acre, but no more, before receiving a patent. And the person making final proof must show that he has a perpetual right in and to the water rights of the construction company hereinbefore mentioned. Under section 795 of the Wyo. C. S. 1920 it is provided that the company furnishing water for any tract of land shall have a first and prior lien on said water right and land upon which said water is used for all deferred payments for said water right. Under Section 4860 it is provided, generally, that any person who shall perform any work or labor upon or furnish any material for the construction of any ditch, canal or reservoir shall have a lien for his work or labor done or material furnished, upon said ditch, canal or reservoir, the right of way for such ditch, canal or reservoir, and water permits and ditch rights used in connection therewith, as well as upon the lands for the reclamation of which said ditch, canal or reservoir is constructed. It is apparent that under the provisions of the last section of our statutes quoted, the claimant above mentioned is entitled to a lien unless, as claimed, the construction company has no interest to which a lien can attach.

The laws of the State of Idaho are substantially the same as those in this state, in relation to Carey-Act lands, and

the identical question in this case was before the supreme court in that state in Bennett v. Twin Falls Land & Water Co., 14 Ida. 5, 93 Pac. 789, where the court gave the subject careful and exhaustive consideration. It was held that the construction company had rights to which a so-called mechanics' lien could attach. Counsel for the plaintiff in error concede that this case would be decisive herein, if the facts were the same. They try to distinguish the cases, because in the Idaho case it appears that the construction company had certain rights of way in connection with the ditch, which, it is contended, does not appear to be true in the case at bar. Claimant pleaded that the construction company had certain valuable rights in the ditch and in the water appropriated to run through it; the construction company denied that; the evidence is not here, and we cannot, therefore, determine which of the claims is true, but must assume, since the court found for the claimant, that the issue was determined in its favor. It is contended, however, that the petition of intervention of claimant shows on its face that the construction company owned no lienable property. This contention is based on the following allegation:

"That said ditch and canal, prior to and during all of the time herein mentioned, was constructed and operated to reclaim certain lands under what is known as the Carey Act, and the water permits and water rights appertaining thereto are used to irrigate lands under said Act."

The case accordingly resolves itself into the question as to whether or not a company that constructs a ditch, and obtains water rights, in connection with the development of land under the Carey Act necessarily, under the laws of this state, has no interest in such ditch, water rights, and other appurtenances, to which a lien such as is claimed in this case can attach. Generally speaking, we may say that three kinds of rights may exist in such a case: (1) the ditch right; (2) the water right; (3) the right in, incident to or in connection with the land. The ditch is usually construct-

ed across lands of the Government of the United States or of the state, and the laws of both of these jurisdictions provide the manner in which rights of way for such ditch may be obtained across their lands by persons or ditch or water companies. There is nothing, however, to prevent anyone from constructing such ditch across private lands. The record in this case does not disclose whether the Hammitt canal runs across public or private lands. If it runs across the latter, certainly the state has no interest in it. That is true also if it runs across Federal lands. If it runs across State lands, it has been constructed either without a grant of a right of way or with it. If the former, the state has no interest in the ditch, as such, but has at most merely the right to treat the construction company as a trespasser; if the latter, it has no interest in it, unless such interest is expressly reserved in the grant, and the record herein does not show that this has been done. We know of no law in this state which makes a ditch, constructed across state lands for the purpose of irrigating Carey-Act lands, the property of the state or which even reserves to the state any interest whatever therein, except only that the state has the right to control the sale-price of an undivided portion thereof and of the water-right to actual settlers of the lands. The state has, no doubt, also the right to make the use of the water, through such ditch, dependent upon compliance with the law governing Carey-Act lands and with the contract entered into in connection therewith, and to make all other provisions to carry out the purposes and objects of the Carey-Act; but it does not follow that the construction company does not retain a lienable interest in the ditch. We cannot, in the absence of a bill of exceptions showing the contrary, assume that the construction company has no such lienable interest therein. It may be that the ditch without the Carey Act lands would have no particular value, especially if so situated that it could not be used for the purpose of irrigating other lands. But that fact does not, *ipso facto*

at least, deprive the construction company of the ownership thereof or vest the title thereof in the state.

Like reasoning may be applied to the water right. What interest has the state therein? Certainly no financial interest. The state is concerned with the settlement of its lands. It controls the water-right in so far that it must not be sold for an amount in excess of that fixed in a contract, and that at least a certain portion thereof must be used for the benefit of lands set apart. The state claims no part of the sale-price. That belongs to the construction company, and since, before disposition of its rights, it owns all of the beneficial interest therein, the fact that these rights are to be used in connection with lands belonging either to the State or Federal government, should not change the character thereof from one that is essentially private to one that is essentially public in the sense that the filing of a lien thereon is prohibited, unless it appears that the law clearly contemplates that result, which we do not think is true. All water and ditch rights, even though used in connection with privately owned lands, are more or less public in their nature, and it is upon that theory that the right of eminent domain is granted to persons and corporations for the purpose of the construction of irrigation works. Yet a lien is granted, under section 4860, supra, to persons who furnish labor and material for such construction. In a case like that at bar, the state only receives fifty cents per acre from settlers on the lands, and we presume that this amount is provided to be paid merely to defray the expenses incurred by the state in connection with the transaction. After that is paid, the state claims no further interest in the land, and the relative position between the construction company and the settler is very much the same as where a construction company constructs irrigation works in any other case and sells an interest therein to any other persons. Section 795, supra, gives, as we have seen, a lien to the construction company on the water-rights and the land of the settler, for the expenses of constructing the irrigation works. This is pur-

suant to the authority granted by Congress to the state. This legislation does not indicate any policy on the part of the state to prohibit liens in connection with Carey-Act projects. The contrary seems to be true. And it would seem to be unjust to grant a lien to the construction company, but none to those that furnish the labor and material, and in the absence of a clear provision to that effect we are not inclined to put such construction upon our laws.

It seems to be the position of counsel for plaintiff in error, however, that the only right which the construction company has is that of a lien, and that such lien is not subject to another lien. It likens the interest of the construction company to that of a mortgage to which no so-called mechanic's lien attaches. We do not think that the analogy is well chosen. While the construction company in this case cannot, perhaps, be said to be the owner of the water right to the full extent that a person who has the legal title to real property is said to be the owner thereof, yet it has the sole and exclusive right to sell it and if any party can be said to be the holder of the legal title to such water right, that must necessarily be the construction company, before it disposes thereof. A vendor who sells his land under a contract retains a vendor's lien for the purchase money that remains due, and at the same time, according to nearly all of the authorities in the United States, such lien of the vendor is subject to a lien of a judgment or attachment. 23 Cyc. 1373; 6 C. J. 407. In the case of Coggshall v. Marine Bank Co., 63 O. S. 88, 57 N. E. 1086, which reviews a number of previous cases decided by that court, it was said, among other things:

"These cases sustain the proposition that the interest of a vendor while any of the purchase money remains unpaid is one subject to levy by attachment or execution, and this conclusion is warranted by our statute. Admittedly the vendor has an interest in the land of some character, equitable in its nature, if you please, but equitable interests in land are by our legislation treated as real estate."

The lien of the vendor is, accordingly, treated as an interest in the property sold.  We need not decide what, if any, rights the claimant acquired in and to the outstanding contracts of settlers, but the situation in the case at bar is analagous to the situation in the Ohio case at least in so far that when the statute grants a lien to the construction company on the water rights above referred to, it is equivalent to stating that the construction company has an interest therein.

A party claiming a lien as against the construction company cannot, of course, acquire any greater rights than the construction company has, and the rights of the landowners in and to the ditch and water rights cannot, we think, be prejudiced in any way.  Craig v. Smith (Idaho) 196 Pac. 1038 and cases cited.  But it is unnecessary for us to determine the full extent of the interest of the construction company to which the lien can attach.  It is sufficient herein to show that it has some rights subject to such lien, and we think that this has been sufficiently done.

The contention of plaintiff in error must accordingly be overruled and the judgment of the district court rendered herein should be affirmed.  It is so ordered.

POTTER, Ch. J., and KIMBALL, J., concur.
NOTE—See 4 C. J. p. 778; 40 Cyc. p. 815 (1925 Anno)

---

INTERSTATE CONST. CO. vs. LAKEVIEW CANAL CO.
(No. 1113, April 15th, 1924; 224 Pac. 850.)

CORPORATIONS—FOREIGN CORPORATIONS—ACCEPTANCE OF CONSTITU-
TION AND STATUTES—"DOING BUSINESS" IN STATE DEFINED—
WORDS AND PHRASES—COMMERCE—CONSTITUTIONAL LAW.

   1.  Where a contract was made in Colorado by a foreign corporation to construct a canal in Wyoming and the corporation constructed part of the canal before the contract was terminated and abandoned, a subsequent compliance