(April Term, 1942)

## ROBINSON v. GALLAGHER TRANSFER & STORAGE CO.

(No. 2211; April 28, 1942; 125 Pac. (2d) 157)

For the appellant there was a brief and oral arguments by *L. A. Crofts* and *A. H. Maxwell* of Lander.

For the respondent there was a brief and oral arguments by *George F. Guy* of Cheyenne, Wyoming, and *J. H. Shepherd* of Denver, Colorado.

RINER, Chief Justice.

This litigation arose in consequence of an application made by one Harry Robinson, doing business as Robinson Transportation Company, of Lander, Wyoming, hereinafter usually referred to as the "applicant", to the Public Service Commission of the State of Wyoming, subsequently herein designated as the "Commission". Robinson's application sought an extension of a so-called certificate of convenience and necessity, numbered 52, as an intrastate common motor carrier in Wyoming, held by the applicant. This certificate of convenience and necessity held by him at the time of his present application for the extension thereof granted him authority on the part of the Commission to transport passengers and light express from Rawlins, Wyoming, to Lander, Wyoming, as well as to transport freight and passengers seasonably between Lander, Wyoming, and Rock Springs, Wyoming, via South Pass. Due to the unimproved character of the South Pass route and the fact that it traversed rough, mountainous territory, it could only be used a portion of the year. The extension application sought was to obtain the privilege of carrying freight over a route possessing an improved roadway and making all year operation possible, viz., over Highway U. S. 287 from Rawlins, Wyoming, to Muddy Gap and Lander, serving intermediate points thereof between the two last mentioned places also. The applicant used this all year route to transport passengers and light express between Lander and Rawlins.

Robinson's application was attacked by a protest

filed on behalf of the Gallagher Transfer and Storage Company of Denver, Colorado, a corporation organized under Colorado laws and frequently mentioned hereinafter as the "protestant" or simply "Gallagher". The application aforesaid was filed with the Commission May 20, 1940; it was amended May 25 and June 19, 1940; and the protest against it was filed June 13 of that year.

June 20, 1940, an order was made by the Commission directing the protestant to appear and show cause why the Commission should not revoke "that portion of their Wyoming common carrier operating rights between Lander, Wyoming, and Rawlins, Wyoming," the protestant having theretofore, on April 10, 1940, by an order of the Commission, been authorized to acquire among other rights the authority to conduct common motor carrier operations between Lander, Wyoming, and Rawlins, Wyoming.

On July 8, 1940, the Commission held hearings concerning both the application and the protest against it and also in connection with the "show-cause" order above mentioned. As a consequence the "show-cause" order was dismissed and Robinson's application was allowed.

Preliminary to its order disposing of these two matters the Commission stated and found among other things that:

"There are no Wyoming intrastate common carriers at the present time transporting property between points and over the route hereinbefore described between Lander, Wyoming, and Rawlins, Wyoming. However, the Gallagher Transfer and Storage Company is in the possession of such operating authority."

And also that:

"Due to the fact that the Gallagher Transfer and Storage Company has failed to provide direct service

between Rawlins, Wyoming, and Lander, Wyoming, the only available route for shippers of freight between points on U. S. 30 and Lander, Wyoming, is via Casper, Wyoming. No service whatsoever is being provided persons living between Muddy Gap, Wyoming, and Lander, Wyoming.

"The protestant states that it will provide service between Lander and Rawlins in conformity with their operating authority, if so instructed by the Commission. However, in view of the fact that the protestant is in possession of, and is operating, a more remunerative route into Lander via Casper, we are doubtful if a diligent development of this route between Lander and Rawlins would be affected, even if the protestant were so ordered by the Commission.

"The applicant is now providing daily passenger, baggage and express service over the route hereunder consideration, and proposes daily service under this property carrying application. The past operations of the applicant as a Wyoming intrastate common carrier are proof of his being fit and able to provide the service herein proposed.

"It appears from the evidence in this case and in Docket No. 7795, that the protestant has abused a monopoly extended it by this Commission, and that such a situation can only be corrected by the granting of similar authority to a competing carrier who has indicated a willingness to provide the service intended in this Commission's order under Docket 1651, dated February 2, 1938."

The order of the Commission following these statements or findings was:

"WHEREFORE, IT IS HEREBY ORDERED That the Wyoming Intrastate operating authority of Harry Robinson dba Robinson Transportation Company under Certificate of Public Convenience and Necessity No. 52, be, and the same is hereby, extended to include the transportation of property between Lander, Wyoming, and Rawlins, Wyoming, via U. S. Highway No. 287, including intermediate service to all points along and over said route, except between Rawlins, Wyoming, and Muddy Gap, Wyoming, and points intermediate thereto.

"AND IT IS FURTHER ORDERED That the oper-

ator shall provide such property transportation service between Lander, Wyoming, and Rawlins, Wyoming, on a schedule of at least one round trip per week.

"AND IT IS FURTHER ORDERED That the operating rights hereinbefore described shall be incorporated into and become a part of Certificate of Public Convenience and Necessity No. 52.

"Dated at Cheyenne, Wyoming, this 28th day of August, A. D. 1940."

From this order the protestant appealed to the district court, where the matter was again heard upon the claims of the respective parties and the testimony given before the Commission as disclosed by the certified transcript brought up to that court by Gallagher. This appeal to the court aforesaid resulted in a judgment wherein it was found:

"as a matter of law that any necessity for an additional service does not in and of itself warrant the granting of a second or subsequent certificate over the same route, unless the operating company then authorized to perform a common carrier service in the field fails to conform to such schedule of service as may be fixed by the Commission, or if need be, as increased by the Commission. Before a new certificate may be granted in a specific territory already served by one or more carriers, it must be made to appear that the carriers then authorized to perform the service have been given an opportunity to increase the existing service so as to bring it up to such standard as the Commission may find necessary to adequately meet the transportation convenience and necessity of the shipping public. Failure or refusal on the part of the existing carrier or carriers to meet the reasonable service requirements of the Commission opens the way for the issuance of such additional certificates as the Commission may find necessary. The record discloses an apparent willingness on the part of the appellant, Gallagher Company, to provide additional service as may be found to be necessary."

The court also found that the final order of the Commission was not supported by substantial evidence in

that the "record discloses that the only evidence of convenience and necessity offered at the hearing before the Commission was that offered by the applicant himself. It was not supported by any corroborating evidence of those who might have need for or who would utilize the additional service. Standing alone, it is insufficient to prove a need for additional service in the face of a protest on the part of interested existing carriers." The court's judgment on these findings directed the revocation of the Commission's final order described above and a remand of the matter to the Commission for further proceedings "not inconsistent with these findings and judgment". This is the judgment brought here by direct appeal proceedings and which we are now asked to review.

In Russell v. Calhoun et al., 51 Wyo. 439, 445, 68 P. (2d) 588, this court indicated the statutory grant of power to the judiciary of this state to review and on such review to interfere with, if necessary, the orders made by the Commission aforesaid. Section 53, Laws of Wyoming, 1935, Chapter 65, was one of these grants, and reads:

"Sec. 53. The judge of said district court shall determine (1) whether the commission acted without or in excess of its authority; (2) whether the final order or decision was procured by fraud; (3) whether the decision or final order is in conformity with law; and (4) whether the final order or decision is supported by substantial evidence."

From the terms of the findings and judgment of the district court in this case, as above recited, it is evident that the third and fourth subdivisions of this last mentioned section were those invoked by the trial court in reaching the conclusion it did. Whether that conclusion is correct as expressed by its findings and judgment is the question to be resolved now.

It would seem that the order of the Commission was

found by the district court of Laramie County to be not "in conformity with law" because, briefly stated, the Commission had not first required the protestant to comply with a definite order imposed upon it by the Commission for additional service as a common motor carrier of freight relative to that portion of Highway U. S. 287, involved in the controversy now before us, i. e., between Muddy Gap and Lander, Wyoming, including intermediate points between those two places.

Section 72-504 W. R. S., 1931, reads, so far as it needs to be considered at this time, in the first proviso contained therein:

"Provided, however, that the commission shall in all cases give due consideration to legally qualified existing means of transportation in the territory in which such certificate is sought and no such certificate shall be granted authorizing common carrier service between points already served by any legally qualified existing means of transportation unless and until such other existing means of transportation then operating shall first have been given an opportunity to provide any additional service which the commission, as the result of a hearing between the interested parties, finds the public convenience and necessity require; if at the conclusion of the presentation of evidence at the hearing the existing transportation agency refuses to agree to provide such or any additional service which the commission may find to be necessary, or if the existing transportation agency, after such reasonable opportunity therefor as the commission may grant, shall fail or neglect to provide such additional service the commission shall then be authorized to grant a certificate for such additional service as it may deem to be necessary as in this article provided."

In 1935 by Chapter 65 Laws of Wyoming for that year, a broad and comprehensive statute, undertaking, as it would appear, a general revision of the law dealing with motor carriers' service, the Legislature of this state, as set forth in the title of the act, undertook to declare "the legislative policy of the State of Wyoming

relating to commercial motor traffic on its state highways", etc. By Section 68 of that Chapter the entire Section 72-504, supra, together with many other sections of Article 5, Chapter 72, were expressly repealed. Instead of Section 72-504 the new act placed in operation Sections which appear to have broadened the powers of the Commission and released it from restrictions such as were contained in Section 72-504 above. Some of these more liberal sections of the 1935 law read thus:

Section 8 in its first sentence declares:

"It shall be the duty of the commission to supervise and regulate the operations of all common motor carriers so that the safety of the highways may be preserved and a sound economic motor transportation structure for the state maintained in such manner as shall most effectively accomplish the objectives of the legislative declaration of policy in Section 1 hereof, and to that end, shall fix and require uniform rates and fares, including the minimum and maximum to be charged by all such carriers for various kinds or classes of service."

Section 40:

"It shall be the duty of the commission to administer the provisions of this Act so as to accomplish the objectives thereof, and in so doing the commission is vested with power and authority to employ such personnel, incur such expense as is necessary and promulgate such rules and regulations as it deems necessary to accomplish such purposes whether or not herein specifically mentioned and to make and enforce rules of procedure for holding hearings on applications and complaints before it, fixing fees for filing complaints or other pleadings, and may hold hearings at any place in the state, compel the attendance of and swear witnesses and parties, take testimony and make record thereof, and a majority of the acting members of said commission shall render enforceable decision thereon."

Section 41:

"The commission shall hold a hearing on all applica-

tions for certificate, except such as may be granted as a matter of right, and shall hold a hearing on all applications for permit when it appears that the service proposed by such application will be competitive in whole or in part with the service of other transportation agencies serving the same territory or along the proposed route of service."

Section 43:

"The Highway Department, together with all transportation agencies with which the proposed service will be competitive, the complaining party, the party complained against and others deemed by the commission to be interested, are interested parties within the meaning of this section upon whom notice of hearing shall be served."

The effect of a repeal, such as described above, which was an outright one, with no restrictions or qualifications, has heretofore been described by this court in Mahoney v. State, 5 Wyo. 520, 524, 42 P. 13, as follows:

"The general rule is that after the statute is repealed, without a saving clause or without an affirmance in substantial terms of enactment of the former law, the former repealed statute, in regard to its operative effect, is considered as if it had never existed, except as to matters and transactions past and closed."

See also 1 Lewis' Sutherland Statutory Construction, 2nd Ed., 544, Section 282.

In the light of the development of statutory law concerning this matter as above recited, it would appear that the district court by its first finding that the Commission's order aforesaid was contrary to law, would seem to have overlooked the effect of the express repeal of Section 72-504, supra, and the subsequent legislation contained in Chapter 65 Laws of Wyoming, 1935, as quoted above. We are asked by the protestant to affirm that court's action in the premises and thus in effect restore among the operative statutes of this state the

deliberately repealed proviso of Section 72-504, above quoted. This, as we think, would be nothing more nor less than a flagrant example of judicial legislation and something beyond the power of the courts of this state to attempt. The position of the protestant on this point appears to be embodied in the following excerpt from its brief submitted here:

"Chapter 65 of the Session Laws 1935 completely revises all of the sections of Article 5, Chapter 72 of the Revised Statutes 1931. The law as rewritten gives no indication of the reason for the omission of the part of Section 72-504 here considered. So far as we can determine this Court has never passed upon or considered the statutory provisions of Section 72-504. Hence the Legislature could not have had in mind any judicial interpretation of the section as a reason for the change. It seems to follow that the only reasonable explanation is that the Legislature considered this rule to be one of the well established fundamental rules of public utility regulation which would be adopted and followed in the normal course of the Commission's business without an express legislative declaration. Certainly the Legislature would have been justified in taking this position in view of the number of jurisdictions that have adopted the rule without any legislative enactment."

We are unable to accept this view of the law. If it were true that the rule thus insisted upon was "one of the well established fundamental rules of public utility regulation which would be adopted and followed in the normal course of the Commission's business without an express legislative declaration", then there was no need at all of such an enactment in the first instance, and the Legislature of this state did a perfectly useless thing when it passed the section with the proviso we have quoted above and another equally useless thing when it repealed Section 72-504, supra. This we conceive the law-making body of this state did not do. We are confirmed in this interpretation of this action when we have in mind, as we must, the broad powers con-

ferred upon the Commission by the 1935 law and the express reference in that law to the disposition by the Commission where applications "will be competitive in whole or in part with the service of other transportation agencies serving the same territory". It is our view that it was the purpose of the Legislature to place matters of this character in the sound discretion of the Commission, with its powers broadened so as to obtain and apply pertinent facts and conditions not so easily determined in the courts. Should the Commission abuse its discretion in handling matters of this kind, then the courts may well be invoked to correct such abuse. Each case must in large measure stand upon its own facts and circumstances. A careful study of the record convinces us that there was no abuse of its discretionary power in the case at bar.

The Commission found, as we have seen, and there is substantial evidence in the record to support it, that "no service whatsoever is being provided persons living between Muddy Gap, Wyoming, and Lander, Wyoming", and also that in its judgment "protestant has abused a monopoly extended it by this Commission, and that such a situation can only be corrected by the granting of similar authority to a competing carrier who has indicated a willingness to provide the service intended in this Commission's Order under Docket 1651, dated February 2, 1938". It points out also that:

"The protestant states that it will provide service between Lander and Rawlins in conformity with their operating authority, if so instructed by the Commission. However, in view of the fact that the protestant is in possession of, and is operating, a more remunerative route into Lander via Casper, we are doubtful if a diligent development of this route between Lander and Rawlins would be affected, even if the protestant were so ordered by the Commission."

Under such circumstances we see no statutory reason why the Commission may not apply the corrective

method of competition between common motor carriers as it, in its original order already quoted, has seen fit to do.

Again, protestant insists by its testimony in the record that service of the territory in question would only result from a business standpoint in continued loss and that for that reason such service is impracticable. If that be so, then the applicant would shortly be obliged to discontinue the operations it seeks by the application aforesaid, and consequently the protestant will not be troubled further with any competition from that source. But protestant's desire, also disclosed by the record, to force a lease of the rights held by it concerning the route involved upon applicant, would appear to indicate at least a doubt on the part of the protestant that service of said territory would prove to be an unprofitable enterprise, and in consequence wishes to share in the profits derived from the applicant's efforts to build up business by more adequate service. We are obliged to confess that we fail to see why the Commission should not direct matters so that the applicant shall have all the fruits of his labor in building up a business in this territory, rather than only a portion thereof, as would be the case if he were obliged to take merely a lease from the protestant of the rights along the route in controversy.

Many cases have been called to our attention by the protestant in support of its view that even without a statute it is general law, binding upon the courts of the nation, that the requirements of the proviso repealed as above set forth are controlling. We have carefully examined them, and do not conclude that the rule is as broad as the protestant contends. We are inclined to think that the courts in disposing of matters of this character have been guided for the most part by statutes quite like, or construed to be in effect quite

like, the provisions of Section 72-504, supra. For example, in State ex rel. United Auto Transp. Co. v. Department of Public Works, 119 Wash. 381, 206 P. 21, it was held that under a law reading,

"The commission shall have power, after hearing, when the applicant requests a certificate to operate in a territory already served by a certificate holder under this act, only when existing auto transportation company or companies, serving such territory will not provide the same to the satisfaction of the commission.",

a certificate holder was entitled to a hearing and an opportunity to make its service satisfactory before a certificate of convenience and necessity could be granted to another to operate in its territory.

In Red Diamond Bus Line Co. et al., v. Cannon Ball Transportation Co., 233 Ky. 482, 26 S. W. (2d) 28, the law involved was:

"It shall be the duty of the commissioner to refuse any application for a permit over a route where there has already been two or more lines established unless it can be shown to the satisfaction of the commissioner that the existing operations are not sufficient to take care of the traveling public and the persons holding said certificate refuse to put on sufficient service to take care of said traveling public." (Sec. 2739j-4, Kentucky Statutes.)

And it was held that the commissioner of motor transportation was not authorized to grant an application for certificate of public convenience and necessity to operate a motor bus line over a route where two or more lines have already been established, except for insufficiency of present service and refusal to put on sufficient service.

The courts of Illinois appear to hold that:

"It is not the policy of the Public Utilities Act to

promote competition between common carriers as a means of providing service to the public."
(West Suburban Transp. Co. v. Chicago & W. T. Ry. Co., 309 Ill. 87, 140 N. E. 56.)

In Egyptian Transp. System, Inc. v. Louisville & N. R. Co. et al., 321 Ill. 580, 152 N. E. 510, the court said:

"The method of regulation of public utilities now in force in Illinois is based on the theory of a regulated monopoly rather than competition."

In Stark Electric R. Co. v. Public Utilities Commission of Ohio et al., 118 Ohio St. 405, 161 N. E. 208, the law (General Code, Section 614-87) provided:

"Before granting any certificate the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought, and in case it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate the commission shall not grant such certificate."

Under statutory direction of this character it was held by the Supreme Court of Ohio that it was the duty of the Public Utilities Commission to afford a public utility transportation company an opportunity to make its service adequate before granting a certificate of convenience and necessity to a motor transportation company to render competing service.

Additional reference may be here made to the cases of Bradford v. Louisiana Public Service Commission et al., 189 La. 327, 179 So. 442, where the law read:

"On finding of the Commission that any motor carrier does not give convenient and necessary service in accordance with the rules and regulations and orders of the Commission, such motor carrier shall be given a reasonable time to provide such service before any existing certificate is cancelled, or a new one granted over the route mentioned in the finding and order rendered after due hearing by the Commission."

Yet it was nevertheless held that a carrier not threat-

ened with cancellation of a certificate of convenience and necessity was not entitled to opportunity to provide additional service.

In Corporation Commission et al. v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P. (2d) 443, the law was in this form:

"Common Motor Carrier Certificates; Application therefor. No common motor carrier shall operate within this state as such carrier without first having obtained from the commission a certificate of public convenience and necessity. * * * *

"* * * provided that when an applicant requests a certificate to operate over a route, or routes, or in a territory already served by a common motor carrier, the commission shall have power, after hearing, to issue such certificate only when the existing common motor carrier operating over such route, or routes, or serving such territory, will not provide such service as shall be deemed satisfactory by the commission." (Laws of Arizona 1933, Chapter 100, Sec. 6.)

Under this statute it was decided that the state's public policy respecting public service corporations was one of regulated monopoly, rather than a competitive system.

It is apparent that our state law governing common motor carriers as it now exists is altogether different from that in those states whose decisions have above been cited and their rulings would not appear to be very helpful here.

The statutory situation presented in this state is more like that which prevails in the State of Oklahoma. In Missouri, Kansas & Oklahoma Coach Lines, Inc. v. State et al., 183 Okla. 278, 81 P. (2d) 660, the court uses the following language concerning the statutory situation on the point in question here in that state:

"Protestant's second contention is that the order of the Commission is invalid and illegal because, if a

public convenience and necessity does exist for additional transportation facilities, the Commission is compelled to give the existing carrier, the Missouri, Kansas & Oklahoma Coach Lines, Inc., an opportunity to furnish such additional service as may be required.

"Decisions of the Supreme Court of Illinois are principally relied upon to support this contention. Suffice it to say, that regardless of the rule announced in other states, the statutes of Oklahoma, conferring jurisdiction on the Commission to grant certificates of convenience and necessity and to amend existing certificates of convenience and necessity by removing restrictions, do not make it the mandatory duty of the Commission to give the existing carrier an opportunity to furnish such additional service as may be required before issuing or amending a certificate of convenience and necessity permitting another carrier to serve the same territory. While we believe that the Commission, in the exercise of its sound discretion, may, in a proper case, afford such an opportunity, it is not required to do so in every case. Its judgment must be governed by the facts of each case. Section 3705, supra, plainly authorizes and makes it the duty of the Commission, after a public hearing, to issue, refuse to issue, or to issue for partial exercise, a certificate of convenience and necessity, and to attach to the exercise of the rights granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require. It also authorizes the Commission to amend any such certificate after a hearing and for good. cause. But nowhere in said statute or in any other statute conferring regulatory power on the Commission over this subject matter is there any requirement that before a certificate to another carrier is issued or amended permitting service of the same territory, the existing carrier must be given an opportunity to furnish such additional service as may be required. We are unwilling to impose a condition not prescribed by the Legislature, which body has the power and authority to regulate this subject matter."

See also Sunshine Bus Lines, Inc., v. Railroad Commission et al., 149 S. W. (2d) 228, (Tex. Civ. App.) ; Davidson Transfer & Storage Co. et al., v. United States, 42 Fed. Supp. 215, 219.

The judgment below also determines that the order of the Commission aforesaid was not supported by substantial evidence because the applicant himself was the only witness produced in support of his application to the Commission. We are unable to uphold this view of the point involved.

In 23 C. J. 53, 54, Section 1796, the text states:

"Ordinarily in civil cases the testimony of a single witness is sufficient to establish any fact except the fact of reputation or notoriety, unless more proof is required by statute, even though the witness is a party or interested in the action." (Many cases are listed in support of this view taken from many separate jurisdictions of the nation.)

20 American Jurisprudence, Section 1190, Page 1044, states:

"The preponderance of the evidence may be established by a single witness as against a greater number of witnesses who testify to the contrary."

See also Wallace v. Wallace, 85 Mont. 492, 279 P. 374, 66 A. L. R. 587.

There is another matter appearing on the face of this record which we may not overlook. Section 51, Laws of Wyoming 1935, Chapter 65, is as follows:

"The appellant shall within thirty (30) days after the docketing of such appeal file with said clerk a certified transcript of the evidence adduced at the hearing before the commission. The judge of said district court may, upon good cause shown, grant one extension of not to exceed thirty (30) days for the filing of such transcript."

The concluding sentence in Section 52 of the same Chapter reads:

"No new evidence shall be taken at such hearing except evidence of fraud in the procurement of such final order or decision and the parties shall appear in the district court as they did before the commission."

It was the duty, therefore, of the protestant to bring before the district court "a certified transcript" of the "evidence adduced at the hearing before the Commission".

An examination of the transcript before us discloses that while certain letters were offered and received in evidence on behalf of the applicant and by the Commission, they are not in the transcript brought to us from the district court and undoubtedly were not before the district court. They should have been incorporated in the transcript. While they may not have amounted to much as proof of applicant's contentions that a service such as he offered was needed for the particular route involved, being admitted for what they were worth, after a hurried examination of said letters by the Commission during a short recess of the hearing it held, still they should have been included in such transcript in order to obey the law quoted above. Not having been inserted there, the transcript is obviously insufficient.

There appears to be no certification of the *"evidence"* submitted to the Commission in this matter, but only of the "testimony" introduced before the Commission on the hearing which terminated in the Commission's order appealed from, as above set forth. There is a difference between the two terms "evidence" and "testimony" when certified transcripts are being considered. See Royal Insurance Company v. Walker Lumber Company, 23 Wyo. 264, 148 P. 341. The same case also holds that where the evidence is not properly brought into the record the court on appeal will presume that the evidence introduced sustained the judgment. See also Robinson v. Commissioner of Internal Revenue, 97 Fed. (2d) 552; Kendrick Coal & Dock Company v. Commissioner of Internal Revenue, 29 Fed. (2d) 559.

Guided by the views on the record before us, as expressed above, we are obliged to reach the conclusion

90

that the judgment of the district court of Laramie County must be reversed, with instructions to remand the matter to the Commission aforesaid, with an affirmance of the Commission's order of August 28, 1940, and for such further proceedings therein as may be necessary but not inconsistent with what is said in this opinion.

*Reversed with instructions.*

KIMBALL and BLUME, JJ., concur.