ANNAJEAN A. RAYBURNE

*Plaintiff and Appellant*

vs.

O. H. QUEEN and ALICE QUEEN

*Defendants and Respondents.*

(No. 2816; June 17th, 1958; 326 Pac. 2d. 1108)

For the plaintiff and appellant the cause was submitted upon the brief and also oral argument of Scotty Gladstone of Sundance, Wyoming.

For the defendants and respondents, the cause was submitted upon the brief of Reynolds & Lathrop of Sundance, Wyoming, and oral argument by Carl L. Lathrop.

Heard before Blume, C.J., and Harnsberger and Parker, JJ.

## OPINION

Mr. Justice Parker delivered the opinion of the court.

Annajean A. Rayburne, lessee of a half-section of grazing land under a State lease was denied a requested renewal by the Commissioner of Public Lands who concurrently granted a lease on said property to Mr. and Mrs. O. H. Queen, conflicting applicants. The

Board of Land Commissioners affirmed this decision, and the district court later dismissed an appeal therefrom as being filed out of time. Such dismissal on appeal to this court was reversed, and the case was sent back for further proceedings. See Rayburne v. Queen, Wyo., 303 P.2d 486, 306 P.2d 367. At a trial de novo, the district court affirmed the board's decision, and Mrs. Rayburne new prosecutes this appeal.

The district court found inter alia:

(1) That the lessee had "violated the terms of her lease by subleasing * * * without the approval of the Board of Land Commissioners * * *, or without sharing the profit which she received therefrom with the State of Wyoming, as required by law."

(2) That the lessee "overgrazed, in person or by her sublessees, * * * to the substantial detriment of said lands and contrary to the best interests of the State of Wyoming," and

(3) As a conclusion of law that the "Board did not act illegally, fraudulently or with grave abuse of its discretion."

Appellant specifies these as error, urging that they are contrary to both the law and the evidence and are unsupported by the record. The burden of appellant's complaint is the lack of any competent evidence in the papers certified and forwarded by the commissioner. Respondents take no issue with this point, and they could not well do so because such papers disclose no transcript of the testimony and, except for copies of the legal instruments, no evidence which might be recognized in any court, either trial or appellate.

Respondents rely rather upon the testimony devel-

oped before the trial court as a basis upon which the propriety of its judgment is to be determined. We have on numerous occasions discussed what is meant by a "trial de novo" for which provision is made under § 24-306, W.C.S.1945. Although we said in Miller v. Hurley, 37 Wyo. 344, 262 P. 238, 242, "that the court is to determine the facts for itself without regard to the determination of facts as found by the board," we explained this statement when we said that this should in no way interfere with or destroy the discretion inherent in the Board of Land Commissioners. We further clarified our views in Howard v. Lindmier, 67 Wyo. 78, 214 P.2d 737, when we indicated that the court from the facts before it should determine whether or not the board might reasonably have arrived at its decision. This is another way of saying that the findings of the board if supported by substantial evidence should be approved by the court on the trial de novo, and we think that such substantial evidence may consist of competent testimony either (a) taken before the board[1] and properly preserved or (b) adduced in the trial before the court "as in the trial of a civil action" (§ 24-308, W.C.S.1945). Having ascertained in the instant case that except for copies of the legal instruments there was no competent evidence forwarded by the board, we look then to the record of testimony before the trial court to determine whether or not its findings and conclusion were warranted.

---

[1]For a discussion of the rules of evidence which should be applicable in board hearings, see 73 C.J.S. Public Administrative Bodies and Procedure § 75; 42 Am.Jur. Public Administrative Law § 129; 24 A.B.A.J. 630 ff.; 1 Wigmore on Evidence, 3d ed., §§ 4a-4c; and see Lake De Smet Reservoir Co. v. Kaufmann, 75 Wyo. 87, 292 P.2d 482. See also Howard v. Lindmier, 67 Wyo. 78, 214 P.2d 737, 741, 742.

Respondents contend that appellant's lease had been violated under the provisions of both § 24-113, W.C.S. 1945, and the lease itself. They urge that appellant having violated the terms of her lease is entitled to no preference right of renewal. As relates to her transactions concerning the State land, Mrs. Rayburne testified that one William Sipe had occupied her ranch in 1952, 1953, and 1954, and had authority from her to run approximately 130 head of cattle on her property. She stated that there was no fence separating her deeded land from the State land in controversy and that both her cattle and those of Sipe ran on all of the land. She said that she received $400 from him in 1953 and something over $600 in 1954, but she insisted that her dealings with him were pursuant to written instruments known as Trade Labor Agreements and that none of the money was for the use of the State land. She said that she discussed one of these agreements with Shoopman, the commissioner's field representative, and had filed the other in the land office. The record indicates that the agreement claimed to be shown to Shoopman granted Sipe authority to pasture his own cattle on the Rayburne lands both deeded and leased in return for his agreement to perform certain work on the fences and upon his payment for cattle pastured thereon at the rate of one dollar per head per month for a period of five months, while the other agreement which was filed with the commissioner contained no reference to the leased land here in controversy.

Respondents in arguing that appellant's dealings with Sipe constituted a sublease cite 51 C.J.S. Landlord and Tenant § 37 b, pp. 555, 556:

"A sublease occurs where a lessee underlets the premises or a part thereof to a third person for a period less than the lessee's term. If the lessee reserves to him-

self a reversionary interest in the term, it constitutes a sublease, however small the reversion, and regardless of the form of the instrument. * * * The presuasive elements of a sublease have been said to be exclusive possession, a fixed term, a fixed rental, and a right of reentry in event of covenant broken."

Appellant counters with the argument that previous opinions of this court have held pasturage arrangements not to be within the prohibition against subleasing and cites Stauffer v. Johnson, 71 Wyo. 386, 259 P.2d 753, and Hawks v. Creswell, 60 Wyo. 1, 144 P.2d 129, as authority for her position. An analysis of these cases does not indicate them to be helpful on this point. In Hawks v. Creswell, it was admitted by the former lessee, at least tacitly, that there was a sublease. The rejected applicants argued that the old lessee had been paid a thousand dollars in rental for the State and deeded lands and that the State had received none of the money. The commissioner, the board, and the trial court having successively found that there was no violation of the lease, this court merely declined to disturb such findings of fact. In the Stauffer case the leased land with extensive improvements placed upon it by the lessee was the base of an "operating ranch unit." Additionally, the grazing permitted on a portion of the leased property was incidental to agricultural purposes, and the lessee did not at any time surrender full possession.

Dictionaries, encyclopedic works, and reported cases, variously define the word sublease, but the definition quoted by respondents from 51 C.J.S. Landlord and Tenant § 37 b, pp. 555, 556, is sufficient for the purposes of any discussion here. Whether there was an actual underletting of the State land in this case with exclusive possession for a fixed term at a fixed rental and with a right of reentry in event of covenant broken is an arguable point. If the trial court believed

from all the facts and circumstances disclosed by the evidence that, notwithstanding Mrs. Rayburne's denial, she had in fact leased the State property to Sipe and was receiving moneys in excess of the amount she was paying for the use of the State land, then the first finding was warranted. However, a party attempting to secure State land because the former lessee has subleased for a cash consideration in excess of the rental paid to the State has the burden of proving this; and where a lump-sum payment is made by a third party, for both the State and the deeded lands, the burden cannot be met by a mere guess as to the apportionment of amounts. See Hawks v. Creswell, 60 Wyo. 1, 144 P.2d 129. The obligation thus imposed is difficult to meet, and a trial court should have considerable latitude in resolving the point. However, respondents presented no evidence in this case tending to show any amounts which Sipe may have paid to Mrs. Rayburne for the State land; and accordingly, we are doubtful that the first finding of the trial court was correct.

We turn then to the court's second finding relating to the alleged overgrazing by the former lessee. The evidence adduced before the trial court was conflicting. Witnesses testifying on behalf of the appellant indicated that the grass was lush and pictures were introduced to bear this out. Witnesses for the respondents on the other hand insisted that the leased land in question was overgrazed, and one even characterized it as being "like this floor." They said that the pictures showed redtop which was not palatable to cattle. Thus, the resolving of the question was with the trial court which found that there was overgrazing to the substantial detriment of the lands and contrary to the best interests of the State. In matters where the evidence is conflicting, we are permitted only to consider that which favors the respondent. See Stauffer v. Johnson, supra, and Jacoby v. Town of

City of Gillette, 62 Wyo. 487, 174 P.2d 505, 177 P.2d 204. The court must have believed the evidence that the leased land was overgrazed, and we are not privileged to interfere with that finding.

The crux of the case, however, relates to the court's conclusion of law, finding that the board did not act illegally, fraudulently, or with grave abuse of its discretion. The record of testimony before the trial court shows why this conclusion was correct. Even if it be assumed that Mrs. Rayburne's agreements with Sipe did not constitute subleases and even if she did not receive moneys from him for the use of the State land, she nevertheless permitted a third person to use such land without revealing in any clear manner to the commissioner or the board what she was doing. We think this fact was one which the board had a right to consider in its determination of what was for the best interests of the State. It is clear beyond question that the preferential right of the former lessee is not absolute but is qualified by the provision that all State lands must be leased in such manner as shall "inure to the greatest benefit to the State." See the extended discussion in Kerrigan v. Miller, 53 Wyo. 441, 84 P.2d 724. The same principle applies to the alleged overgrazing. This was not claimed by the respondents to be a lease violation per se, but if the board believed as was stated in its action that the land was overgrazed and if the court was similarly convinced by the evidence there presented, such fact was one which might properly be taken into consideration in a determination of what was for the greatest benefit to the State.

The evidence developed in the trial de novo before the district court in general supported the decision of the board. No fraud being charged and no illegal ac-

tion or abuse of discretion having been shown, the board's determination should not be disturbed. See Howard v. Lindmier, supra, and Banzhaf v. Swan Co., 60 Wyo. 201, 148 P.2d 225.

The board, deriving its authority from the constitution[2] but by the legislature being subject in its decisions to review by the courts, occupies a somewhat unusual position in our State government which is worthy of comment. If the board is to be accorded the full discretion to which we think it is entitled, the district court at the trial de novo should have before it for consideration a true transcript of the evidence which was taken before the board, thus assuring all concerned that the same criteria was applicable in all determinations. The right of appeal authorized by the legislature could thus be most effectively exercised without disturbing the board's original authority. We broached the subject in Howard v. Lindmier, supra. Now, notwithstanding the correct result in the present case, we think we would be remiss if we did not more fully voice our views on the subject: The testimony before the board in contested cases should be preserved verbatim and be available to the court in the trial de novo as one of the bases for its judgment.
Affirmed.

Mr. Justice HARNSBERGER.

I concur in affirmance of the district court's judgment but believe the following comment should be made.

The board derives its authority from both constitutional provision and legislative act, but the constitutional authority is paramount. Hence, any appeal taken from the board's decision by virtue of legisla-

---

[2]Art. 18, § 3.

tive direction must not contravene constitutional precept. It follows that the legislative grant of an appeal to the district court from a decision of the board to lease or refuse to lease the State's public lands, must be interpreted in the light of the constitutional mandate and so as to leave that appellate right free from interference with the constitutional edict which gives the leasing of our State lands exclusively to the Board of Land Commissioners and not to the courts. Recognition of this has resulted in this court's giving a modified or limited meaning to the words "trial de novo" as they appear in the statute providing for an appeal to the district court.

Article 18, § 3, of our constitution provides:

"The governor, secretary of state, state treasurer, state auditor and superintendent of public instruction shall constitute a board of land commissioners, which under direction of the legislature as limited by this constitution, shall have direction, control, leasing and disposal of lands of the state granted, or which may be hereafter granted for the support and benefit of public schools, subject to the further limitations that the sale of all lands shall be at public auction, after such delay (not less than the time fixed by congress) in portions at proper intervals of time, and at such minimum prices (not less than the minimum fixed by congress) as to realize the largest possible proceeds. And said board, subject to the limitations of this constitution and under such regulations as may be provided by law shall have the direction, control, disposition and care of all lands that have been heretofore or may hereafter be granted to the state."

In Banzhaf v. Swan Co., 60 Wyo. 201, 208, 209, 148 P.2d 225, 227, we noticed this constitutional provision and plainly stated:

"An inspection of these provisions of the fundamental and statutory law of this State as they concisely apply

to the matter before us discloses that the Board of Land Commissioners is the only authority vested with the power to lease the section of land in question. The courts of this State have no such power. * * * "

Section 24-306, W.C.S. 1945, provides:

"24-306. * * * Any party who may feel himself aggrieved by the decision of the board of land commissioners rendered in any contest proceeding held before said board, may have an appeal from such decision to the district court sitting within and for the county in which the land (in) controversy is situated. All persons joining in the appeal shall be joined as appellants, and all persons having interests adverse to the parties appealing, or any of them, shall be joined as appellees; and upon said appeal being perfected, said contest proceeding shall stand to be heard and for trial de novo, by said court."

It was also explicitly said in Banzhaf v. Swan Co., supra, at page 211 of Wyoming Reports and at page 228 of Pacific Reporter:

" * * * the trial 'de novo' as mentioned in Section 91-306, W.R.S. 1931 (now § 24-306, W.C.S. 1945), is simply *limited to a determination on the part of the District Court whether on the facts proven there was 'an illegal exercise' of the Board's discretion, a case of fraud, or a 'grave abuse of such discretion'.* Unless one of these three elements should appear the action of the Board should not be disturbed." (Emphasis supplied.)

Howard v. Lindmier, 67 Wyo. 78, 85, 86, 214 P.2d 737, 739, agrees with Banzhaf v. Swan Co. and L. L. Sheep Co. v. Potter, 67 Wyo. 348, 224 P.2d 496, conforms to the same view.

These decisions of our court are controlling and they limited the authority of the district court in this case so that it should not have done more than review

the record of proceedings before the board which the Commissioner certified to it, in order to ascertain if there had been an illegal exercise of discretion, fraud, or grave abuse of discretion. In making this review the court was entitled to receive evidence bearing directly upon any such improprieties, but as it could not lease the lands in question to either contesting party, even though such evidence was uncontradicted and unmistakably showed the unsuccessful applicant before the board to be the one entitled, evidence on that score or to show who had the better or best right was unavailing. This must be so because irrespective of the court's reaction to such evidence it would be powerless to grant a lease or to refuse to affirm the board's grant of lease if that action was supported by any substantial evidence *produced before the board.*

However, there is still left open the question of what may be done upon appeal to the district court where, as in this case, the record certified is devoid of *any* competent evidence supporting the board's action. When the opinion states, "This is another way of saying that the finding of the board if supported by substantial evidence should be approved by the court on the trial de novo, * * * ", it is emphasized that the validity and finality of the board's decision in this matter should have rested upon the sufficiency of the evidence *which was received before the board* as well as the freedom of the board's action from impropriety or illegality. That the district court was without authority to substitute its judgment or discretion for that of the board and direct to whom the lease should be given is well established. See State ex rel. Marsh v. State Board of Land Com'rs., 7 Wyo. 478, 53 P. 292.

It seems entirely unreasonable to assume that either the constitution or the legislature intended to clothe the board with discretion greater than that possessed

by other fact-finding tribunals. Certainly that has not been expressly done. To read into constitutional or legislative provisions any enlarged grant of discretionary authority would be to imply that this Board of Land Commissioners was free to fraudulently, arbitrarily or improperly lease the lands of this State. To so conclude would be unconscionable and would mean that we forget the constitutional admonition that "Absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, * * * '''. Art. 1, § 7. The legislature has, however, acted in accordance with constitutional authority in directing that an appeal might be taken by an unsuccessful lease applicant from an adverse decision of the land board, and in such a case it has required the Commissioner of Public Lands to certify the record of the board's proceedings to the district court. Although the right of appeal thus granted is said to require "trial de novo" in the district court, by the judicial determination of this court, the function of the district court upon such an appeal has been limited to a review of the board's action for the purpose of ascertaining if the board illegally exercised its discretion, if there was fraud, or if there had been a grave abuse of discretion. This plainly indicates that only the competent evidence *which appears in the record* certified to it by the Commissioner should be considered by the district court except, of course, that extraneous evidence might be received to show improper or illegal action on the part of the board.

It is true that § 24-308, W.C.S. 1945, says " * * * at the trial of such appeal, evidence shall be taken and other proceedings had as in the trial of a civil action before said court.", but here, as in the case of the legislative use of the phrase "trial de novo", we must either hold that provision void if it means that upon such

evidence the district court could substitute its judgment for that exercised by the board upon different evidence or without such evidence, because in such case the provision would conflict with the constitution, or else we must give it an interpretation consonant with the exclusive leasing right granted the board by the constitution. It seems entirely logical to conclude the evidence referred to in the statute is only that evidence which may tend to prove or disprove the board's action was born of fraud, illegality or abuse of discretion.

In the present state of our law, a lease applicant who is unsuccessful before the board is in a very unhappy position. The legislature says he has the right to a trial de novo in the district court, but because the constitution gave the board the sole and exclusive right to grant or withhold a lease of State lands, the courts have been compelled to interpret the legislative appeal provision as meaning that less than a re-trial de novo should be had and the defeated party is only entitled to a review of the board's action to determine if fraud, illegality or abuse actuated the board's decision. The unsuccessful party must depend upon the uncontrolled action of the Commissioner of Public Lands to perpare and certify to the district court a record of the board's proceedings. Here it should be pointed out an impasse occurs. No provision of law is made which entitles a lease applicant to demand or require that the testimonies given at hearings before the board be reported and transcribed, or that such a transcript of *all* the evidence given before the board be prepared. In consequence, whether or not the testimonies of witnesses were preserved, the Commissioner may certify to the district court only a certified copy of all papers and documents in evidence, together with a transcript of all orders and journal entries and a

certified copy of the decision appealed from, without there being included, what in many cases would be the most compelling evidence, i.e., the testimony of informed witnesses.

Such an incomplete record leaves the appealing party helpless to affirmatively show that the findings and decision of the board were unsupported by substantial evidence and hence illegally made, motivated in abuse of discretion or conceivably even by fraud. This is so because without *all* the testimony and *all* the evidence considered by the board, at least that which is most favorable to the successful applicant, it is impossible for the district court to say with assurance that the board either did or did not have substantial evidence before it upon which the award of lease was made.

This court has repeatedly held that where evidence is not brought into the record, it must be presumed the evidence sustains the judgment given, Robinson v. Gallagher Transfer & Storage Co., 58 Wyo. 69, 125 P.2d 157; where evidence is not in the record, the court assumes requisite facts were established to sustain the judgment, Pellish Bros. v. Cooper, 47 Wyo. 480, 38 P.2d 607; that absence of evidence does not warrant presumption that judgment is not sustained by the evidence, Jacobson v. Wickam, 36 Wyo. 522, 257 P. 7; where evidence not brought to reviewing court, facts found must be taken as true, Arp v. Jacobs, 3 Wyo. 489, 27 P. 800; and where part of evidence is omitted the record is no more effectual than no record and the court will assume the judgment is supported, Callahan v. E. O. Houck & Co., 14 Wyo. 201, 83 P. 372. See also Lakeview Canal Co. v. R. Hardesty Mfg. Co., 31 Wyo. 182, 224 P. 853, and Royal Ins. Co. v. O. L. Walker Lumber Co., 23 Wyo. 264, 148 P. 340, 24 Wyo. 59, 155 P. 1101.

Applying these rules, this appellant must fail because of the presumption arising from *absence* of evidence certified to the district court and the board's action must be deemed free of fraud, free from illegal exercise of discretion, free from any abuse of discretion and based upon sufficient evidence. This remains true even though it was beyond the power of appellant to demand and require that the testimony of witnesses testifying before the board be reported and transcribed, or for the appellant to require and compel the Commissioner to incorporate all such evidence in the record when it is certified to the district court where the board's action is to be reviewed. This condition of the law as it now stands reflects a travesty on justice. Whether by intention, by purpose, inadvertence, or inability to do so, the Commissioner in certifying such an incomplete record fortifies the board against any just criticism of its functioning. It is even conceivable, as matters now stand, that the board could arbitrarily grant a lease to one of two or more contestants without having before it a single scrap of competent evidence or in the face of uncontradicted evidence. Insofar as the *record* certified to the district court in this case is concerned, that is exactly the case, yet, under the rule of law we must nevertheless say it is conclusively presumed the board's action was supported by substantial evidence, which in fact may never have been produced before it.

What is being said sums up to this: (1) The board is the sole and exclusive authority to lease public lands in this state. (2) This function of the board must be legally exercised. (3) The legislatively granted appeal from decisions leasing such lands in contested instances, although said to require a trial de novo in the district court, has been judicially limited to a review of the board's action to ascertain if there was an illegal exercise of the board's discretion, if there was fraud,

or if the board had abused its discretion. (4) The statutory provision for taking of evidence in the district court must be interpreted as limited to the taking of evidence bearing upon fraud, illegality or abuse of discretion.

It follows that the taking of testimony or receiving other evidence in the district court to fortify the conflicting claims of contesting parties is improper, except as such evidence may tend to demonstrate the illegality, the abuse of discretion or fraud attending the board's action.

Notwithstanding all that is here said, we must not overlook the fact that, whether properly or improperly, the district court did proceed to supplement the record sent to it, and received further evidence which was preserved and which we now find in the record sent to us. Of course we have no way of knowing if the evidence so produced before the district court was also given before the board or even that it is the same evidence given to the board for consideration. As we do not know if the evidence considered by the district court was the same evidence as that considered by the board, we cannot say the board's action was taken upon the same evidence which influenced the court. So we rest upon the horns of a dilemma and are truly between Scylla and Charybdis.

Under such circumstances we must resort to what may be considered to be a practical solution. It seems clear that if this matter is remanded for further proceedings at this late date no good purpose would be served, because it is reasonable to anticipate that if this were done the same evidence which was given before the district court would now be produced before the board and if this occurred the board's decision to lease

the lands to the appellee would have to be sustained as that district court evidence was sufficient and substantial to support the granting of the lease.

This court has heretofore more or less directly indicated that the testimony given before the land board in contested cases should be preserved, but so far the suggestion appears to have been unfruitful. Notwithstanding the board's failure to adopt the suggestion, this court has not seen fit to lay down a definite course of procedure conforming with what is here outlined, but we will continue to deplore the highly unsatisfactory state of our present law in the matter.