OCTOBER TERM, 1943

WESLEY J. HAWKS and GROVER C. WARREN,
Appellants in the District Court and Appellants in
the Supreme Court,

vs.

CARROLL J. CRESWELL, Appellee in the District
Court and Respondent in the Supreme Court.

(No. 2272; Dec. 21, 1943; 144 P. 2d 129)

2

4

*Otis Reynolds,* of Sundance, for appellants.

*John G. Hutton,* of Sheridan, for respondent.

## OPINION

RINER, Justice.

This is a proceeding by direct appeal from a judgment of the District Court of Campbell County, Wyoming modifying and confirming as modified the approval by the Board of Land Commissioners of the State of Wyoming of the decision of the Commissioner of Public Lands which awarded a lease of certain state lands upon the conflicting applications of appellants,

Wesley J. Hawks and Grover C. Warren, for said lands to Carroll Creswell, the respondent herein. The facts necessary to be recited in order to obtain a proper understanding of the controversy are substantially these:

One Grace S. Creswell held a lease upon 553.73 acres of state land located in Sections 7 and 8, Township 56 North, Range 76 West of the sixth principal meridian. She also held a lease upon certain other state lands totaling 1200 acres located in Sections 7, 8, 9, 16, 18, 20 and 21, Township 55 North, Range 75 West of the sixth principal meridian. Each, of the leases ran for terms of five years commencing February 1, 1937 and accordingly expiring February 1, 1942. This lessee died on or about November 6, 1939 in McLean County, Illinois testate, and her sister, Belle S. Martin, was duly appointed administratrix with the will annexed by the Probate Court of that county. The party last mentioned qualified under this appointment January 8, 1940. The estate of the deceased was in regular course administered, all debts and expenses paid and a final order was entered by said probate court February 21, 1941 discharging the said Belle S. Martin as such administratrix.

Thereafter and on May 7, 1941 a certified transcript of the probate proceedings aforesaid was filed in the District Court of Campbell County pursuant to the provisions of Section 88-918 W. R. S. 1931 and the court last named was requested to make an order admitting said certified transcript to record therein and also to make certain findings of fact. . Such an order was on June 9, 1941 made by said district court after due notice given, no objections thereto being filed and the court on that date directed that:

"The certified transcripts of the proceedings in the Matter of the Estate of Grace S. Creswell, Deceased,

in the Probate Court of Illinois, in and for the County of McLean, heretofore filed in the office of the Clerk of this Court, be, and they are hereby admitted to record in this Court, and shall be considered and treated from this date as original proceedings in this Court and conclusive evidence of the facts therein shown; and the probate of the Estate of Grace S. Creswell, Deceased, in this County and State may be and is hereby dispensed with."

The transcript of the probate proceeding in Illinois above mentioned included a copy of the will of the said Grace S. Creswell, deceased, and its paragraph numbered "fourth" reads:

"I give, grant and bequeath the residue of my estate, both personal and real, to the following named persons: One-half (1/2) of said residue to Carroll J. Creswell. One-sixth (1/6) to George W. Creswell, One-sixth (1/6) to Robert H. Creswell, One-sixth (1/6) to Kenneth Creswell. In case one or more of the last three named do not survive me, his or their share shall be divided equally among the survivor or survivors."

It is apparent therefore that the four persons named in said paragraph were the residuary legatees of the testatrix Grace S. Creswell. This transcript was received in evidence in the district court in the present litigation without objection.

It appears also by the certified copy of the final decree in the estate of William Creswell deceased dated October 22, 1941, also received in evidence on the trial of this matter below without objection, that Carroll Creswell is the surviving son of William Creswell and that he is a life tenant of the William Creswell lands as stated in his application on file with the Commissioner of Public Lands of the State of Wyoming, as hereinafter described. Both the estates—that of William Creswell and Grace S. Creswell, the step-

mother of Carroll Creswell—were apparently completely probated before Carroll Creswell made his application aforesaid for a renewal state lease upon the lands leased to his stepmother. Carroll Creswell testified that he, himself, exercised the control over the Creswell lands involved in this litigation through an oral arrangement with his nephews, George, Robert, and Kenneth Creswell. Subsequently this oral arrangement was reduced to writing under date of August 28, 1942 before the case at bar was tried in the district court of Campbell County on September 14 and 15, 1942. This written statement of the oral agreement is embodied in a so-called lease agreement between the nephews of Carroll Creswell aforesaid as parties of the first part and Carroll Creswell of the second part, this writing containing the following recitals relative to certain lands in Campbell and Sheridan Counties therefore owned by June Creswell, William Creswell and Grace S. Creswell:

"WHEREAS, all said lands have for many years been operated as a unit and all the parties hereto desire that the same continue to be so operated as a unit, at least throughout the lifetime of the Second Party herein;

"AND WHEREAS, since prior to the Autumn of 1941 the Party of the Second Part has been in the exclusive control of the said Creswell lands and all of them, on an understanding with First Parties hereto that he should continue in such exclusive control and rights so long as the Party of the Second Part shall live,

"NOW THEREFORE, in consideration of the premises and for the purpose of making a written record of the understanding of the parties hereto, the said parties of the First Part do hereby formally lease and demise unto the Party of the Second Part all the interests of the Parties of the First Part in and to all the following described lands and premises and

rights situate in the counties of Campbell and Sheridan, State of Wyoming."

The different tracts of deeded lands theretofore held by the parties above named are then described and with them are leased:

"All rights of every kind and character of the Parties of the First Part in and to all State leases and State leased lands in which Grace S. Creswell had an interest at the time of her death."

On December 19, 1941 Carroll Creswell filed with the Commissioner of Public Lands of the State his application to lease all of the lands held by Grace S. Creswell under state leases, said leases expiring as already indicated February 1, 1942. In that application he stated that he is a life tenant of the William Creswell deeded lands. These deeded lands appear to adjoin the state lands applied for as already recited as we understand the plats attached to the application filed by Creswell as aforesaid. The applicant in response to the interrogatory contained in said application reading:

"If you hold the expiring lease upon the lands applied for, have you violated its covenants to the injury of the State by sub-leasing for a cash consideration in excess of the rental paid to the state, without payment of one-half of such excess rental to the State?" answered, "No."

He also states in said application that he resides in Sheridan, Wyoming and that he has been a bona fide resident of this state for over forty years. His testimony on the trial of this case is to the same effect. He tendered an anual rental proposal of $199.00 for all the lands for which his application had thus been made.

Subsequently and on January 19, 1942 there was received by the Commissioner of Public Lands the application of Grover C. Warren to lease the lands in

Sections 7 and 8, Township 56 North, Range 76 West, mentioned above as covered by the then presently expiring lease to Grace S. Creswell. Thereafter and on January 26, 1942 there was also received by the official last named the application of Wesley J. Hawks to lease the lands described in the other state lease to Grace S. Creswell for 1200 acres. These applications, of course, were in conflict with the Carroll Creswell application theretofore filed. There was an offer by Grover C. Warren to rent annually the lands he sought for the sum of $76.00 and by Wesley J. Hawks for the lands he applied for of the sum of $156.00 or a total of $232.00 annual rental for all the lands herein involved.

This conflict was by the Commissioner aforesaid on March 11, 1942 resolved in favor of Carroll Creswell. The annual rental of the lands to be paid by the said Carroll Creswell was fixed by the Commissioner at $200.00. The Commissioner stated in the course of his decision regarding these conflicting applications that:

"The conflict lands have been leased by the Creswell ranch interests from the time they were acquired by the State of Wyoming in 1897, to the last expiration date of Grace S. Creswell's lease, February 1, 1942. The deeded lands of this ranch are now in the possession of Carroll Creswell, who may be considered as assuming the status of the 'old lessee'. The loss of the lease on any part of the conflict land undoubtedly would work a financial hardship on the Creswell interests through depreciation in the value of the deeded holdings which have been built up around these State lands, the State lands having become an integral part of this old ranch unit."

His action in this respect was thereafter on appeal by Grover C. Warren and Wesley J. Hawks to the State Board of Land Commissioners upon a hearing had at which all the interested parties were present

in person and represented by counsel on May 14, 1942 duly aproved by that Board. Appeals were taken from this action of the Land Board to the District Court of Campbell County where after a trial of the matter de novo as required by Section 91-306 W. R. S. 1931 that court in its judgment found:

"That Appellee, at the time of making his application for renewal leases, and at the time the said leases were issued to him, was a bona-fide resident of the State of Wyoming; that he was then the holder of the expiring lease on the State lands involved; that the rentals fixed in the said expiring leases had been paid when due; that the Appellee had not violated any of the provisions of the expiring leases; that he was and is qualified under the provisions of the Statutes of Wyoming to receive leases of State lands; that the State Land Commissioner and the State Land Board, in their lawful discretion should have offered and granted new leases for the lands involved in this cause to the Appellee at the rentals offered by the Appellants; that the Appellee has actual and necessary use for said lands, and holds title to lands in the vicinity of the lands applied for; that the rentals offered by the Appellants are not unreasonably excessive nor out of proportion to rentals paid for lands of similar kind and character in said community, and that Appellee must meet and equal the higher bids of the Appellants."

This judgment additionally recited that:

"The said Appellee having been informed of his rights by the Court and having now elected to meet said bids and having offered to pay the amount of $232.00 annually for the lease upon all of said lands and premises above described,"
it was accordingly adjudged that the Commissioner of Public Lands and the Board of Land Commissioners accept the increased rentals thus tendered and that as in this manner amended the action of the Board was "confirmed and ratified." The appeal of Warren and Hawks from this judgment followed as prescribed by Section 91-310 W. R. S. 1931. So far as

the statutory law involved in this litigation is concerned the section chiefly to be considered is Section 91-113 W. R. S. 1931 which reads:

"The board shall lease all state lands in such manner and to such parties as shall inure to the greatest benefit and secure the greatest revenue to the state. Except as herein provided, preference shall in all cases be given to applicants who are bona fide resident citizens of the state and to firms, associations or corporations authorized to transact business in the state, having actual and necessary use for the land and holding title to lands in the vicinity of the land applied for, who offer to pay the highest annual rental for the use of the land for a term of five years; provided, that an applicant who is the holder of an expiring lease, and has paid the rental when due, and has not violated the provisions of the lease, and is qualified under the provisions of § 91-109, shall have the right over and above all others to lease the lands covered by the expiring lease, to the extent that he may take the lease at the highest annual rental offered by any other applicant; provided, that should the highest rental offer received be unreasonably excessive and clearly out of proportion to rentals paid for lands of similar kind and character the board shall fix the rental at which the old lessee may take the lease, upon a fair and reasonable basis within the minimum and maximum limits of appraised rental values as provided in § 91-108."

It may be here noted that § 91-109 referred to in the quotation last made does not appear to be involved in this litigation.

It is contended for appellants that as the transcript of the probate proceedings in McLean County, Illinois in the matter of the estate of Grace S. Creswell, deceased, discloses that the final report of the administratrix with the will annexed of said deceased does not mention the state leases standing in the name of Grace S. Creswell and which were isued to her as already hereinabove set forth and further that as

the order discharging said administratrix likewise does not mention said leases, in consequence the Commisioner of Public Lands, the State Board of Land Commissioners and the District Court of Campbell County could not consider Carroll Creswell the respondent herein as the "holder of an expiring lease" within the provisions of § 91-113 quoted above. No authorities which we regard as in point are submitted. With this contention we are unable to agree and for several reasons among which are:

§ 91-306 W. R. S. 1931 referred to above provides:

"Any party who may feel himself aggrieved by the decision of the board of land commissioners rendered in any contest proceeding held before said board, may have an appeal from such decision to the district court sitting within and for the county in which the land in controversy is situated. All persons joining in the appeal shall be joined as appellants, and all persons having interests adverse to the parties appealing, or any of them, shall be joined as appellees; and upon said appeal being perfected, and said contest proceeding shall stand to be heard and for trial de novo, by said court."

The record of this case discloses that both the transcript of the probate proceedings in McLean County Illinois and the order of the District Court of Campbell County admitting said transcript to probate in the court last mentioned in accord with the provisions of § 88-918 W. R. S. 1931, as already noted, were received in evidence on the trial of the matter at bar, as also heretofore indicated, without any objections whatsoever being made by the appellants thereto.

These matters thus incorporated in the evidence herein disclose a number of important facts, viz.: That the District Court of Campbell County found, as it was authorized by § 88-918 W. R. S. 1931 to do, that

"Due notice of the filing of said petition and transcripts and notice of this order has been given as required by law and by order of this Court; that no objection thereto has been made and there is no appearance thereagainst; and that all the allegations contained in said petition and in the transcripts thereto attached are true.

"That certified transcripts of proceedings in the Probate Court of McLean County, State of Illinois, have been duly filed in this Court, including a certified list by Nellie R. Bonney, Clerk of Said Probate Court, of all creditor's claims, over her certificate, that they have all been paid, and should be admitted to record and considered and treated from this date as original probate proceedings of the Estate of Grace S. Creswell, Deceased, in this Court, and as conclusive evidence of the facts therein shown."

and as we have seen made its order in accord therewith; that all expenses of the administration in the Illinois Probate Court have been paid and the administratrix with the will annexed of Grace S. Creswell has been finally discharged; and that as heretofore recited Carroll Creswell and his three nephews were and are the residuary legatees under the will of Grace S. Creswell.

There is evidence in the record also from which the District Court was authorized to find that the entire Creswell interests in the Creswell deeded lands and in the state leases involved herein were agreed by all the residuary legatees under the Grace S. Creswell will should be held by Carroll Creswell during his life and be managed by him. This evidence is in the form of undisputed sworn testimony by the respondent and the admissions of the other residuary legatees contained in the lease agreement described above.

In this connection we may properly recall that, as stated in 69 C. J. 419-420:

"A general residuary clause will cover everything which is not otherwise well disposed of in other parts of the will, it being presumed with respect to other gifts that the testator gave the property away from the residuary legatee only for the sake of the particular legatee";

and the same text additionally states:

"The test of the power of a residuary clause to carry property is whether the property belonged to the testator and not whether he knew that it was his, and one of the functions of a residuary clause is to dispose of such things as the testator may have forgotten or overlooked or his possession of which may have been unknown to him. Thus it is no ground for excluding property from a residuary clause that the testator did not know or believe he had title to it."

The case of Clement vs. Whittaker, 231 Fed. (C. C. A. 3rd Cir.) 940, was one where, by a residuary clause in his will, a testator disposed of "all the rest, residue and remainder" of his estate to a specified hospital organization located in Trenton, New Jersey. After his death there was paid to his executors the sum of $123,801.45 which accrued to him as a residuary legatee under the will of a predeceased brother, distribution of whose estate had been deferred until the termination of a life estate therein. The United States Court of Appeals held contrary to the contention of the next of kin to said testator that this fund did not pass by the testator's will, that it did so pass through the residuary clause therein. Affirming the decision of the District Court of the United States for the District of New Jersey, the Court stated several of the conclusions it had reached thus:

"The fund in question, not being required in Wesley E. Whittaker's estate for legacies or specific bequests, forms part of his residuary estate. * * *

"Whether the testator knew that he owned the fund here in question when he made the residuary bequest

is immaterial. The test of the power of the residuary clause to carry property is whether the property was the testator's, and not whether he knew it was his. Dalrymple v. Gamble, 68 Md. 523, 13 Atl. 156; Stannard v. Barnum, 51 Md. 451; Ireland v. Foust, 56 N. C. 501; Bland v. Lamb, 5 Maddock, 250; Perry v. Hunter, 2 R. I. 80."

In Davenport vs. Sandeman, 204 Ia. 927, 216 N. W. 55, it was held that the ownership of legatees under a will was subject only to the superior rights of creditors and expenses of administration.

The opinion in the case of Matthews vs. Turner, 64 Md. 109, 21 Atl. 224 uses the following language:

"The main question in this appeal is whether, in an action of ejectment by legatees to recover certain leasehold property specifically bequeathed to them, it is necessary to prove in addition to the probate of the will, and the grant of letters testamentary, and the assent of the executor to the legacy, that the property was included in the inventory returned by the executors, and was distributed to the legatees by the order of the orphans' court? There ought not to be any difficulty in determining this question. Upon the death of the testator his entire personal estate, including property specifically bequeathed, devolves on the executor, to be administered by him for the benefit of creditors, and the payment of legacies, and the balance, if any, to be distributed to the persons entitled under the statute of distributions. Strictly speaking, the entire personal estate ought to be returned in the inventory to the orphans' court. But the title of a legatee to property specifically bequeathed does not depend upon the inventory returned by the executor, nor does it necessarily depend upon the orders of the orphan's court. By the will itself, the legatee gets an inchoate title, and when the debts are paid, and the executor assents to the delivery of the property to the legatee, the title of the latter is thereby perfected. Nothing more is necessary, and, upon the title thus perfected, the legatee may maintain an action of ejectment if the property be leasehold, or an action of trover for the conversion of personal property. * *"

The Court of Appeals of the State of Ohio in Central Nat. Bank Savings & Trust Company vs. Gilchrist et al, 23 Oh. App. 87, 154 N. E. 811 describes one of the contentions of the defendant in that case thus:

"As to the first claim of the defendant, the competent evidence shows the terms of the will of Joseph C. Gilchrist, deceased, and the nomination and appointment of the executors and testamentary trustees, and that they are the same persons, but the record does not disclose that an account was filed showing distribution to have been made by the executors to the trustees in accordance with the terms of said will, nor that an order of distribution in kind was made by the probate court of Lake County. Therefore the defendant asserts that the plaintiffs do not show title to the claim upon which their suit is bought. But with this contention we do not agree."

Disposing of this question, the court says that:

"In this state, when a person makes a valid will, as was done in this case, it is the source of title of the property given to devisees and legatees therein named. The title of the real estate devised vests immediately in the devisees upon the probate of the will, and relates back to the time of the death of the testator.

"The title of the personal property passes by the will to the executor, as trustee, for the benefit of the creditors, legatees, and distributees, and, after the payment of the debts of the estate, the executor, as trustee, may, if he so desires, deliver the remaining personal property to those entitled by the will to receive it, thus vesting the legal as well as the beneficial ownership in the distributees.

"We are, therefore, unanimously of the opinion that, in this case, upon the facts shown by the record, an order of distribution precedent to the distribution of the assets of said estate to the testamentary trustees was necessary, as were the filing the approval of a final account of said executors, and that said testamentary trustees did have capacity to bring said suit, if there was a legal claim upon which to base the same. * * *"

Similarly 3 Woerner's American Law of Administration 1937-1938, § 566 says:

"Where administration of the estate is had, the administrator will be protected in paying over to a legatee or distributee his share of the estate, if all the debts allowed against the estate have been paid, and the time has expired within which claims may be presented for allowance, except upon special application to the Probate court, although there has been no order of distribution or final settlement. If he pays the right persons their proper shares, he is protected, whether it is done under sanction of the court or not, or before or after the passing of his account * * *."

We think that under the foregoing authorities and the facts collected above, the District Court of Campbell County had a right to find as it did that Carroll Creswell, at the time he made application for the renewal of the two Grace S. Creswell state leases, could be regarded by the Commissioner of Public Lands and the Land Board as the then holder of these expiring leases on the state lands included therein. There cannot be the slightest doubt that the title to these leases passed to Carroll Creswell and his nephews under the residuary clause in his stepmother's will. The creditors of her estate and the expenses of administration were all paid. The value of these leaseholds was not needed to pay these debts and expenses and that being so, when the administratrix with the will annexed was discharged, any title she may have had to said leases could be presumed to have been passed to the residuary legatees. Just here it may be noted that Carroll Creswell advanced money from his own funds apparently to take care of all the debts and expenses in said estate and part of that money was ultimately refunded to him, not being needed for the purpose for which it was advanced.

The authorities above cited make it clear that the title of the administratrix aforesaid to all personal

property of the estate was merely held for the purpose of satisfying the creditors of the Grace S. Creswell estate, expenses of administration and, of course, specific legacies as described in the will and for no other purpose so far as the facts of this case disclose. It is aparent that Carroll Creswell and his three nephews affirmatively agreed that he should handle these lease matters and on that point there is no dispute.

It is claimed that Carroll Creswell was not a "resident citizen" of this state at the time he made application for renewal of these expiring leases because he voted in Montana several years before, to-wit, 1930, 1938, 1940. But he was registered to vote in Sheridan, Wyoming for the 1942 general election, he maintained a business office and a home residence there and he testified that he was a resident of the city of Sheridan, Wyoming and that he had lived practically all his life upon the Creswell ranch lands from 1889 to 1903 except when he was a away at school. These with other facts appearing in the record would appear to supply substantial evidence upon which the trial court might ground its finding that he was a bona-fide resident citizen of this state. The very most that can be claimed for the evidence on this point is that it was conflicting and the trial court having found thereon in favor of respondent we may not now disturb that finding.

In this connection it is interesting to note that in State of Texas vs. State of Florida et al, 306 U. S. 398, 59 S. Ct. 563, 83 L. E. 817 where four states had rival claims for death taxes upon the estate of Edward H. R. Green, these states being Texas, New York, Florida and Massachusetts, the Supreme Court of the United States held Green to be domiciled in the state last mentioned where he had a home and an estate on which

he spent in excess of $6,000,000.00 and where he lived for most of the time between the years 1921 and 1936 the year of his death. Yet the proofs in the case showed also that prior to 1911 and until 1920 he voted in Texas in state and national elections; was active in Texas politics, was a Texas delegate to the Republican National Convention and served as a Republican National Committeeman of Texas; and additionally that he had positively state, "I have never changed my legal residence from Terrell, Texas."

The surrogate court of New York County in the case in re Benjamin's Estate, 27 N. Y. S. 2d 948 considered the question whether for tax purposes the legal residence of the decedent Benjamin at the time of his death was in the State of New Work or in the State of Connecticut. A petition asking to have this question determined was filed by the executors of the will and upon a special order made, the State of Connecticut was permitted to intervene as a party. In the course of the elaborate opinion filed in the case, this was said:

"Connecticut places much reliance on the fact that on October 15th, 1938, Mr. Benjamin 'took the Elector's Oath' required in that state and actually voted there at the general election held on November 8, 1938. The act of voting, by itself, is not conclusive as to domicile. Matter of Trowbridge's Estate, Supra (266 N. Y. 283, 194 N. E. 756); Matter of Lydig's Estate, 191 App. Div. 117, 180 N. Y. S. 843. It is one factor to be considered with others in evidence. In Matter of Trowbridge's Estate, supra, the decedent voted in New York State and even subjected himself to the payment of large income taxes there, which could have been avoided by him by a Connecticut domicile, yet he was held by the Court of Appeals to have maintained his home and place of legal residence in Connecticut. The Court of Appeals accepted the argument of Connecticut that voting was not an exclusive test of domicile."

The decision in the Benjamin case was subsequently affirmed, not only by the Supreme Court Appellate Division but by the New York Court of Appeals. See, in re Benjamin's Estate, 289 N. Y. 554, 43 N. E. 2d 531.

In Baker vs. Keck, 13 Fed. Supp. 486, 487, it is indicated that "citizenship" and "domicile" are substantially synonymous, but citizenship implies more than "residence" and carries with it the idea of identification with the state and a participation in its functions. We are inclined to think the safe rule should be that whether a person is a resident citizen of a particular jurisdiction must be determined from the particular facts of each case.

Complaint is made that the Public Land Commissioner and the State Board of Land Commisioners concluded that respondent had actual and necessary use for the land involved in these Grace S. Creswell leases and that the trial court was mistaken in affirming this view of the matter. It is shown without dispute that Carroll Creswell owned certain livestock which used these lands and there is testimony also that to deprive the Creswell ranch property of the state lands included in the leases, the renewal of which Carroll Creswell seeks and which the Creswell ranch owners had held for so many years, would depreciate the remaining property as much as fifty per cent as well as inflict severe hardship upon the owners. Matters of this character are obviously within the sound discretion of the officials charged with the administration of the state lands and certainly should be given due consideration. We conclude that the trial court was correct in finding as it did on this point. Any conflict in testimony would of course necessarily have to be resolved in respondent's favor.

It is claimed that the respondent violated the terms of the expiring leases because he sub-leased the state lands and the deeded lands and received the sum of $1000.00 in rental thereof, and that the state received none of this money. It is pointed out by appellants that each of the expiring leases provided:

"The lessee shall have the right to sub-lease the lands leased herein for grazing and agricultural purposes upon a crop or grazing share basis, provided, that in no event shall such lands be sub-leased for a cash consideration in excess of the rental paid to the State unless one-half of such excess rental be paid to the state."

But the state lands herein involved were not leased separately from the deeded lands but a lump sum rental was agreed upon between the lessor Carroll Creswell and the lessee and sub-lessee of said lands one, I. S. Cobb together as a single unit. The testimony as to the respective use-values of the leased and deeded lands was conflicting. Under such circumstances we do not perceive how it would be proper for this court to interfere with the trial court's determination that the respondent had not violated any of the terms of the expiring leases, both the Public Land Commisioner and the State Board of Land Commissioners arriving at the same conclusion. It would seem that any attempt under such a situation to apportion the amounts for which the two classes of lands, that is the state lands and deeded lands, were separately and in fact leased so far as concerned the meadow lands on each would be a mere guess. In that connection it may be observed that the burden devolved upon appellants to show that the state lands were in fact "sub-leased for a cash consideration in excess of the rental paid to the state." That was not done as we read the record.

Briefly the argument of appellants is that the state lease rentals were a certain fixed sum and that subtracting that from the gross rental paid for all the Creswell holdings as a unit, the result discloses an amount which appellants say is an unreasonable rental for the deeded lands thus leased. But this would appear to be a mere matter of opinion. What one person might consider unreasonable, another might under similar circumstances regard as very reasonable. If the lessee was willing to lease the deeded lands including both their meadows and their grazing acreage for a dollar an acre or even more when used in conjunction with state lands and either made a profit or found such an arrangement financially satisfactory in any view of the matter he might take under the use he put them to, we fail to see how it could be said that the state lands were sub-leased for more cash rental than was paid to the state in violation of the terms of the state lease. The amount for which the deeded lands should be leased was a matter which concerned only the lessor and lessee. The Commissioner of Public Lands and the State Board of Land Commissioners as well as the District Court all appear to have reached the conclusion that there had been no violation of the terms of the expiring leases on the part of Grace S. Creswell and with that conclusion we are obliged to agree.

It is urged that the trial court was in error in directing the respondent, Carroll Creswell, to pay and the State Board of Land Commissioners to receive an increased rental over that fixed by the Commissioner of Public Lands and said Board. We are unable to see that such a ruling was a mistaken one. The decision in that regard was simply in accord with the provisions of § 91-113 W. R. S., 1931 supra. As argued by counsel for respondent, it would be quite

"unfair" to decline to allow Carroll Creswell to have the lease renewal merely because he was not asked to "take the lease at the highest annual rental offered by" the appellants thereby increasing the rental sum offered by him of $199.00 to $232.00. The plain purport of the section last mentioned is, as that section explicitly states, to "secure the greatest revenue to the state." If the Board of Land Commissioners has overlooked—as might well be the case—giving a party an opportunity to comply with the state law, we can perceive nothing amiss in the district court on appeal setting the matter right by its order directing that that be done. No question arises herein as to whether the amount offered by appellants was unreasonably excessive or out of proportion to rentals paid for lands of similar kind and character. Besides, the respondent was quite willing to pay and did tender this increased rental and the judgment of the trial court so states.

It is suggested additionally that the case of Kerrigan vs. Miller, 53 Wyo. 441, 84 P. 2d 724, is in point in establishing the equities of this litigation in favor of the appellants. We do not so interpret that decision. The facts were quite different from those appearing here. In that case Mr. Kerrigan, the applicant for renewal of a state lease, was not interested in the renewal of the lease for himself personally. His name was simply employed as a conduit through which to turn the rights to be obtained under said lease over to the livestock company. He in fact owned no land in the vicinity of the property applied for and had not the slightest use for the lands sought.

Other minor matters are urged by the parties in their briefs in this court but after careful consideration of the record before us and all the points advanced

thereon in criticism of the action of the trial court, we are convinced that enough has already been said to indicate that we think the conclusion of the district court of Campbell County was right and it should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.