Frank C. BOSLER, Appellant (Petitioner and Appellant below),

v.

Arthur E. McKECHNIE, Geraldine McKechnie, and Arthur E. McKechnie, Jr., Appellees (Defendants and Appellees below).

No. 2975.

Supreme Court of Wyoming.

June 13, 1961.

David N. Hitchcock, Laramie, for appellant.

Pence & Millett, George J. Millett, Laramie, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This case involves an appeal by Frank C. Bosler from a judgment of the District Court of Albany County, Wyoming, which affirmed an order of the State Board of Land Commissioners granting to Arthur E. McKechnie, Geraldine McKechnie, and Arthur E. McKechnie, Jr., a lease of state lands, namely the N½ of Sec. 32, T. 17, R. 71 W, 6th P.M., Albany County, Wyoming, for which Frank C. Bosler has a preference right of renewal. Counsel for appellant contends: "Appellant's preference right to renew his lease has never diminished and was arbitrarily, despotically, capriciously, wrongfully, and, through grave abuse of discretion on the part of the Commissioner, Board, and District Court, violated without any cause or justification." Counsel for the appellees, the McKechnies, contend that Bosler, the appellant herein, violated his lease by subleasing it to the appellees in 1955 and 1956 as hereafter discussed and that it was for the best interest of the state that the lands in question should be leased to the appellees.

Bosler owns the south half of the same Section 32 and it, together with the state lease, seems to be mostly enclosed by a fence. The north and east fence is owned by the appellees and the west fence appears to be owned by the Warren Livestock Company. The appellees own the land on the north, the east, and also on the south of this section. Bosler's main lands are located further west. Section 32 is about two miles from Bosler's nearest pasture land on the west and about ten miles from his headquarters. Appellant owns about 2,000 cattle and 20 horses. Appellees own about 700 cattle and 60 horses. Appellant owns about 17,000 acres of deeded land and leases about

6,500 acres of state land. Appellees own about 15,000 acres of deeded land and lease about 2,800 acres of state land.

It seems that in the twenties the state lease here in question was attached to the lands of one Powell. The land is now owned by the appellees. Powell had mortgaged his land but not the south half of Section 32 and the state lease, so the state lease became detached from this land by reason of the foreclosure of the mortgage. It does not appear what became of the state lease between the twenties and 1949. On January 1, 1949, a lease for ten years to the state land in question here was awarded to P. H. Lorenz Livestock Company. By mesne assignments, all of which were approved, the lease came into the hands of Donald H. Roberts. He apparently owned a great deal of land in the neighborhood. He sold a large portion of that about May 1955 to Bosler who in turn sold most of the land lying to the south on contract to Fred W. Phifer, retaining, however, the south half of the foregoing Section 32 and a half section in Section 30 of the same township and range. The state lease on the north half of Section 32 was evidently intended to go with the south half but the assignment of the lease by Roberts to Bosler was not actually made until November 1958 and the assignment was approved in January 1959 and recognized by the Commissioner of Public Lands in the subsequent dealings.

On December 19, 1958, Bosler made application for renewal of his lease. He offered to pay fifty percent more as rental which previously had been twenty-four dollars per annum. The application contained this question: "If you hold the expiring lease upon the lands applied for, have you violated its covenants to the injury of the State by sub-leasing for a cash consideration in excess of the rental paid to the state, without payment of one-half of such excess rental to the State?" Bosler answered "No". A few hours after Bosler applied for the lease an application for a lease to the same land was made and filed by the appellees.

A contest between Bosler and the appellees was considered on April 9, 1959, by the Commissioner of Public Lands. He concluded, after stating various facts, that Frank Bosler would not suffer any hardship by the loss of the lease. He stated: "From statements and report of the fieldman, the Commissioner feels that Applicants McKechnie have the greater need and could make more beneficial use of this State land." The application of Bosler was accordingly denied and the lease granted to the appellees. An appeal was taken in due time to the State Board of Land Commissioners. A full hearing was held before the board on June 4, 1959. Bosler testified on his own behalf. Arthur E. McKechnie, and he alone, testified on behalf of the appellees. The board confirmed the action of the commissioner. An appeal was duly taken to the District Court of Albany County as heretofore stated. The court confirmed the action of the board and an appeal has been duly taken to this court. In this opinion when we use the term "McKechnie", it refers to Arthur E. McKechnie, Sr.

We might mention the fact that during the proceedings before the board, as well as before the district court, counsel for Bosler wanted to introduce the testimony of one Howard T. Carroll, an expert land man, who, as counsel for appellant offered to show, would have testified more clearly than Fred W. Phifer that Bosler never violated the terms of his lease. The refusal to permit him to introduce this testimony is also assigned as error by the appellant. We need not, however, discuss that matter except to mention it incidentally hereafter.

1. Violation of lease.

As already stated, appellees contend that Bosler violated his lease. Section 36-66, W.S.1957, as well as the lease itself, provides that no state land shall be subleased for a cash consideration in excess of the established rental unless one-half of such rental is paid to the state. In 1955 and 1956 McKechnie asked to pasture cattle on the south half of Section 32 above mentioned

and on about 320 acres of Section 6 to the southeast of Section 32, as well as the state land. In 1955 he paid $400 for such rental. In 1956 he paid $350. McKechnie gave checks for this rental and marked that of 1955 "For Pasture of Sec. 32–6." The check issued in 1956 stated: "Pmt for lease on Sec. 32 & 6." The pasturing season is for approximately six months in the summer. McKechnie testified that his lease was for a year but it is probable that nothing was said as to time for the pasturing. The land was not let in 1957 although some cattle belonging to appellees drifted onto the lands for about a month. The land was permitted to rest in 1958 and so it lay fallow during that year, a method approved by Bosler as well as McKechnie. The report of the commissioner states: "Additional information from Mr. McKechnie revealed that Mr. Bosler has been agent for Mr. Don Roberts in leasing this half section of land for the past few years to the McKechnies and this was done without permission from this office." So Mr. McKechnie assumed the role of an informer—a role which we doubt is becoming to a man of his high standing in the community, especially when the transactions of 1955 and 1956 were rather old when the lease here involved was sought. Mr. McKechnie himself had state leases and knew the requirement of the law. He knew that there would be difficulty in determining what amount, if any, of the rental paid for the deeded and state lands should be allocated to the state lease, so if he thought that there would be a violation of the statute if no part of the rental was paid to the state, he, as a good citizen, should have insisted or at least mentioned that a proper allocation of the rental should be made so that no violation of the statute would occur. Instead of doing so, he left the allocation entirely to the appellant and after doing so he should not complain of what appellant did, who, according to his testimony allocated no more than twenty-four dollars—the state rental—to the state lease. There is evidence in the record to show this to be proper. Bosler testified at length on this point, stating that the deeded land had 95 percent of the water and that grass was no good without water. The point would have been clear if Mr. Carroll had been permitted to testify as counsel for appellant asked. He would have testified, as counsel for appellant claims, that the rental for the deeded land of Bosler was worth over $700 per season rather than the $400 and $350 paid by appellees.

Let us look at the matter from a practical standpoint. There is no fence dividing the north half from the south half. The cattle grazing on the south half of Section 32 would naturally graze on the north half as well. If appellant had told McKechnie that the latter could pasture this deeded land and that he would charge him nothing for the state lease, then clearly there would have been no violation of the lease. The mere omission of these words changed nothing from a practical standpoint. McKechnie attempted to apportion more than twenty-four dollars to the state lease by testifying that the pasture on the state lease is as good as that on the south half and better than that on Section 6. As already stated, there is testimony to the contrary. We do not think that the testimony of Mr. McKechnie was effective to show that more than twenty-four dollars should have been allocated to the state lease. In Rayburne v. Queen, 78 Wyo. 359, 326 P.2d 1108, 1110, 1111, we stated:

"* * * a party attempting to secure State land because the former lessee has subleased for a cash consideration in excess of the rental paid to the State has the burden of proving this; and where a lump-sum payment is made by a third party, for both the State and the deeded lands, the burden cannot be met by a mere guess as to the apportionment of amounts. * * *"

In Hawks v. Creswell, 60 Wyo. 1, 144 P.2d 129, 137, it was stated:

"* * * It would seem that any attempt under such a situation to apportion the amounts for which the two

classes of lands, that is the state lands and deeded lands, were separately and in fact leased so far as concerned the meadow lands on each would be a mere guess. * * *"

In Stauffer v. Johnson, 71 Wyo. 386, 259 P.2d 753, the late Justice Riner considered at length the question as to whether permitting temporary pasturing of leased ground was a violation of the lease which provided that the lease should not be sublet or underlet without the written consent of the lessor and concluded that it was not, citing a great many authorities. It would not subserve any good purpose to pursue this subject further. We think that the appellees have not sustained the burden of proof that appellant violated the terms of the lease.

2. The best interest of the state.

Counsel for appellees contend that even if Bosler did not violate the lease, still it appears to be to the best interest of the state that the lease should be let to the appellees. Their main argument is that Bosler held the south half of Section 32 and so the state lease for speculative purposes and that he wanted to sell his land together with his lease. There is some doubt on that point in view of the fact that Bosler let the land lie fallow in 1958 which seems to be some indication that he wanted to use it. He had some purebred Angus cattle and he testified that Section 32 would be an ideal section on which to place 30–40 head of these cattle; again, he could pasture some horses or some steers on the section. There is, according to his testimony, a county road from his main lands to Section 32 so that he has easy access to that section. Bosler stated that he had some terrible losses in 1953 and to be able to take advantage of the last portion of the loss in connection with his income tax he sold some land and pasture in 1958 (a matter which we do not quite understand) and "as a result, I am short of pasture now and I am in a position where I need this Section 32 very badly."

McKechnie testified as to his need of the lease as follows:

"Well, we need additional grazing land because we don't have quite enough to accommodate what we have got. We have had to cut down prior to this and would like to build our herd back up to where it should be so we could hold more replacement heifers and get a few more cattle."

Counsel for appellant asks in this case: "Does the state benefit in any way by having its grass eaten by some of Appellees' 700 head of cattle, rather than some of Appellant's 2,000 head, or some of Appellees' horses rather than some of Appellant's?" Apparently in his wrath, he also stated, inconsequently: "Appellant holds no political office or appointment; Appellee Arthur McKechnie Jr. was appointed by the Governor to the State Board of Agriculture." In fact, counsel contended at the hearing before the board that under the rules of the board Arthur McKechnie, Jr., could not lease any state land.

The lease to appellees of the north half of Section 32 would leave the south half as an isolated tract. Whether it is worth much as so isolated does not appear. Leaving it idle of course would not be for the best interest of the state and, in that connection, counsel for appellant asks: "How will the State gain, out of helping Appellees pressure Appellant into selling them his south half of Section 32 at their price?" There is no direct evidence that McKechnie deliberately applied for the lease of the north half with the intention to force a sale or to depress the sale price of the south half. However, the commissioner stated in his report: "Mr. McKechnie is willing to purchase Mr. Bosler's half section if they can get together at a later date, and then he would be able to move cattle much easier as the McKechnies own land on three sides." And again he stated: "Mr. McKechnie objects to Mr. Bosler running Angus cattle next to his Hereford cattle. He is desirous of this land as he feels that if he could purchase the S½ of Section 32 from Mr. Bosler, it would round out his place and eliminate some fence. Lack of

stock water on N½ Section 32 is no problem as he has water on adjacent lands." This would seem to indicate that McKechnie was desirous of buying the south half of Section 32 and applied for the lease to the state land as a means in that direction.

We hardly think from what has been said that it has been distinctly shown that the lease to the state land to the appellees is for the best interest of the state. However, we should probably not interfere with the action of the board if appellant did not have a preference right of renewal of his lease. Counsel for appellees are wholly silent on the subject and so we shall proceed to consider that.

■■ The preference right of renewal is provided for by § 36–66, W.S.1957. Counsel for appellant has called our special attention to the history of the legislation. Our attention has not previously been specially called to this legislation so as to require our critical examination. An amendment to previous legislation (§ 91–113, W.R.S.1931) is contained in Ch. 60, S.L. of Wyoming, 1943. It starts out in § 1 by providing that the State Board of Land Commissioners should lease for grazing purposes in such manner as shall inure to the greatest benefit to the state. It then, among other things, further provides, as contained in the previous statute, that an applicant who is the holder of an expiring lease and has paid the rental when due and has not violated the provisions of the lease shall have a preferred right to renew such lease. At the end of the section it then provides the following which seems to be superfluous: "Provided further, that the state board of land commissioners shall in the leasing of state agricultural lands lease all such lands in such manner and to such parties as shall inure to the greatest benefit to the state." Then came the legislation of 1945, namely, Ch. 34, S.L. of Wyoming, 1945, that legislation being now embodied in § 36–66, W.S.1957. The legislature evi-

dently thought that too much emphasis had been placed on the provisions relating to "the greatest benefit to the state." Section 1 of the act is in general much like § 1 of the leglislation of 1943. In the end of § 1 it repeated the end clause of the legislation of 1943 but added a provision. It reads as follows: "Provided further, that the state board of land commissioners shall in the leasing of state agricultural lands lease all such lands in such manner and to such parties as shall inure to the greatest benefit to the state; provided, that an applicant who is the holder of an expiring lease, and has paid the rental when due, and has not violated the provisions of the lease, and is qualified under the provisions of Section 91–109 [W.R.S., 1931], shall have a preferred right to renew such lease." We stated in Kerrigan v. Miller, 53 Wyo. 441, 84 P.2d 724, 729, that the legislature, by providing for a preference right of renewal, "distinctly limited or regulated the board's discretion." The legislation now in force seems to go even further. We need not determine how much further. The legislation on its face and in the absence of violation of the lease, and when the rental has been paid, gives precedence to the right of renewal to a qualified person. What the legislature meant is doubtless that the refusal to give effect to the preference right of renewal is a detriment to the interest of the state. We stated in Kerrigan v. Miller, supra, that under the then legislation (§ 91–113, W.R.S.1931) effect must ordinarily be given to the preference right of renewal. That must be even truer under the legislation now in effect. We need not say that there are no exceptions to be made,[1] but we find nothing in the case at bar which justified the board in denying the right of renewal to the appellant. The judgment of the district court must be, accordingly, reversed and the case is remanded to the trial court with instruction to direct the State Board of Land Commissioners to rec-

1. See Kerrigan v. Miller, 53 Wyo. 441, 84 P.2d 724; Howard v. Lindmier, 67 Wyo. 78, 214 P.2d 737.

ognize the preferential right of Bosler for an agricultural lease to the north half of Section 32 herein in question.

Reversed and remanded.

PARKER, J., concurs in the result.